*209] *Mary Roberts *against* John Swift, John Maxwell Nesbit and Samuel Benezet executors of John Kidd.

If one does services for another at his request, no matter what his expectations were, assumpsit may well be supported to recover a compensation.

Though a jury give liberal damages in assumpsit, yet if they are not outrageous, court will not order a new trial.

MOTION for a new trial, on the following statement of facts made by Mr. Justice Shippen, before whom and Mr. Justice Bradford, the cause was tried at the last October assizes for Bucks county.

This was an action of *assumpsit*. Pleas *non assumpsit* and payment.

The plaintiff's demand consisted of two parts. 1st. For wages for fifteen years service in the testators' family. 2d. For an annuity of 30l. per year during her life, on a supposed express promise from the testator.

In support of the plaintiffs' demand, it appeared in evidence, or was admitted, that she was the niece of Mrs. Kidd, the wife of the testator, and one of her heirs at law; that the most considerable part of Mr. Kidd's fortune came by his wife, who vested the whole in him; that the plaintiff when a girl, had learned the trade of a mantua maker at Burlington; that she afterwards sat up that trade at Bristol, took her mother to live with her, and carried on business to advantage; that when her aunt married Mr. Kidd, she left off her business and went to live with them; and there was some evidence, though not very explicit, that this was at the instance and particular request of her aunt; that during the time she lived in Mr. Kidd's family, she was industriously employed in his service; and that the work she did there was of different kinds, such as sewing, mantua making, knitting and making clothes for all the family, which consisted of eight blacks and one white girl of ten or eleven years of age; that besides this, she occasionally attended the kitchen, and assisted in preparing and serving up dinners for company; that although she was sometimes permitted for a few days at a time, to work for a neighbour in the way of her business, yet in general she refused to be spared from her work in the family; that no contract had been made for payment of these services, nor were any payments made, the plaintiff having an ample supply of cloathing of her deceased mother's. After many years residence in Mr. Kidd's family in this way, she was at length compelled to leave it, occasioned as it was said at first by an insult offered to her by one of the negroes, and afterwards by her incurring the displeasure of Mr. Kidd, who desired her to leave the *210] *house. She applied to Mrs. Coxe as her friend, and prevailed on her to go to her uncle (as she called Mr.

[Roberts v. Swift et al.]

Kidd) to state her situation to him, and ask for assistance. Mrs. Coxe accordingly expostulated with Mr. Kidd, and at length asked him what he meant to allow Polly for her services; he answered, that he had been in a passion with her and was sorry for it; that he did not mean to throw her off, but would allow her 30l. a year, which the witness understood to be for her life; that Mr. Kidd did not expressly say so, but she believed he meant so. It further appeared in evidence, that Mr. and Mrs. Kidd had said, they took Polly to provide for her, and Mrs. Kidd told a neighbour shortly after her marriage with Mr. Kidd, that if Polly married to her liking, she would give her 500l.

The evidence on the part of the defendant, consisted chiefly in a number of letters written by the plaintiff to the testator from Virginia, where she had gone on a visit to her brother. In these letters she pathetically describes her wretched situation, expresses her grief for lying under his displeasure, and signifies to him, that her sole dependence for support was on the generosity and goodness of her uncle and aunt. Some other of her letters appeared upon her return from Virginia and her final departure from the house, wherein she solicits her uncle for assistance, and reminds him of his promise to allow her 30l. a year; and tells him, if he did not mean to provide for her, he ought to have let her know it, in the early part of her life.

It appeared, that Mr. Kidd had paid several sums of money for her board, for which the plaintiff gives his estate credit in her account, shewn to the jury; Mr. Kidd likewise bequeathed her 50l. in his will.

On this evidence, the court gave a charge favourable to the plaintiff; but at the same time told the jury, they could not consistently allow both parts of the plaintiffs' demands; that is, a compensation for the fifteen years services and the value of the 30l. a year annuity too; because it appeared in evidence, that the annuity promised, was intended as a compensation for those services; but that they might measure the value of her services by that promise, and allow a gross sum equal to what they should calculate that annuity to be worth.

The jury found for the plaintiff 720l. damages, and appear to have measured their damages in a different way from that recommended by the court. They have rejected the annuity, and given the plaintiff a sum equal to 30l. a year during the fifteen years service, together with interest.

*A point of law was urged by the defendant's counsel, in the course of the trial, that the plaintiff having [*211 done those services, in contemplation of a legacy, she was therefore not entitled to a compensation in an action for those services. The court were of opinion, that this depended on the evidence given in the cause. If it was a mere voluntary

[Roberts v. Swift et al.]

courtesy, the law was as stated by the defendant; but if the evidence satisfied the jury, that the services done were at the request of the testator, then it was not a mere voluntary courtesy, and the action will lay.

Mr. Ingersoll for the defendants, now moved for a new trial on three grounds.    1st, Misdirection of the court; 2d, Verdict against evidence; and 3d, Damages being excessive.

He contended, that there was no evidence given to the jury of any contract whatever between the parties, respecting wages, either express or implied.    Indeed, the plaintiff in one of her letters to the testator, disavows any claim on that ground, but appeals to his generosity alone.    It is now a settled rule of law, that when one does services for another in expectation of a legacy, he shall not resort to his action on being disappointed.    It is to be considered, how it was understood by the parties at the time of doing the business.    Osborn v. the Governors of Guy's Hospital, 2 Stra. 728.    The principle is the same, whether the services done for the deceased are great or small.    The quantum of the work and labour can make no difference in law.    As well might an action lie for a right of gleaning; but a matter of courtesy or charity shall not be turned into a right.    Hen. Black. Rep. 51.

Great injury will be done to society, by sanctifying the present verdict.    No one will venture to afford shelter to a poor relation or friend, if he is to meet this retribution for his good offices.    The effect produced will be the reverse of what is proposed.

Besides, the damages are exorbitant.    The measure of damages, recommended by the court to the jury, in case they found that the services were done at the request of the testator, was, to adopt the 30l. per annum, said to have been promised to the plaintiff, which was a most liberal allowance.    In this mode of calculation, the damages would have amounted to 450l. but the jury have swelled them to 720l.

Messrs. Sergeant, Wilcocks and Coxe for the plaintiff, insisted that the rule of law cited was general, but subject to exceptions.    For if there was "any request" made by the defendant, there the courtesy or benefit shall be presumed to be not voluntary, *but done in pursuance of the request. *212] 1 Espin. 87.    And it should seem, that "any thing done in the course of a person's business or employment," shall not be deemed a voluntary courtesy, but the foundation of a contract.    Ib. 88.

An unguarded expression in a single letter from the plaintiff to her uncle, is much relied on.    But it is to be considered what was her situation when she wrote it.    She was in distress and helpless.    An appeal to Mr. Kidd's generosity, to whom she had devoted the prime of her life, would probably produce the best effects.    Her other letters are couched

[Roberts *v.* Swift et al.]

in much stronger language. She had left a comfortable independence, to go into his service: her labours were severe and unremitted: she clothed herself: she could not go out without consent, which was sometimes refused. The whole was submitted by the learned judges who tried the cause to the jury, on strong circumstances, tending to shew "a request" on the part of Mr. and Mrs. Kidd. If their consciences were satisfied on that head, they were then directed to find for the plaintiff.

There is no danger to be apprehended to society from confirming this verdict. It will strongly impress the great duties of distributive justice; "*cuique suum tribuito.*" It will evince, that the most affluent and powerful are not exempted from the just claim of their poor dependents.

The damages are not excessive. They comprehend the labours of many years. The jury too have probably considered the provision promised to the plaintiff to be for life, according to the testimony of Mrs. Coxe, and have made their calculations accordingly. Every demand of the plaintiff is included in this verdict, and it was fully agreed, that she shall not resort to the estate of Mr. Kidd in any future action. Damages are the peculiar province of a jury.

*Per curiam.* We are all fully satisfied, that the direction of the judges was founded on sound law, and they very properly and fairly left the question "of request" to the jury under all the circumstances. In such a case, very slender testimony would satisfy ingenuous minds. It was a case of great hardship.

If the jury were satisfied from the whole of the evidence, that the services were done at the request of the testator, no matter what the plaintiff's expectations were, the action may well be supported. The exception to the general rule is well marked in 1 Espin. 87, 88.

The damages are liberal, but not so outrageous as to justify the interposition of the court, in ordering a new trial. The *plaintiff, in the case before us, appears to have suffered greatly, and to have been hardly dealt with by the testor. [*213

Motion for a new trial denied, and *per tot. cur.*

Judgment *pro querente.*

Referred to in 71 Pa., 169.
Services rendered in expectation of a legacy cannot support an **action.** Snyder *v.* Castor, 4 Yeates, 353; Thompson *v.* Stevens, 71 Pa., 161.