# Jacob Snyder and Hannah his wife *against* Samuel Castor, administrator with the will annexed of George Castor.

In the argument of a reserved point, court will confine their inquiry to the matter reserved.,

*Indeb. assumpsit*, lies on an express as well as implied promise, and where it is executed. But where it is executory, special *assumpsit* is the proper form of action.

YEATES, J. who tried the cause at *Nisi Prius*, on the 5th March instant, reported the case and evidence as follows : The *action was brought to December term 1801, and the declaration contained two counts. The first was a general *indebitatus assumpsit* for work, labour and service, done by the *feme* before marriage ; the second contained a *quantum meruit*. To which the defendant pleaded *non assumpsit* and payment, with leave, &c. and also the acts of limitations.

It appeared in evidence on the trial, that Hannah Snyder the plaintiff, was the daughter of George Castor, deceased, born in 1748, and was married on the 16th February 1782, being then 34 years old. Before her intermarriage she had lived constantly

with her father, and worked in and out of doors, in his service. In 1793, George Castor made a will, devising to his daughter Hannah 3l., but provided therein, that she should forfeit her legacy, if she should make demand for her services. Hannah was his daughter by his first wife. It was proved on the trial, that George Castor had several times declared, that Hannah should be paid for her service after his death, and particularly about 1797. His farm, at his death, was worth from 5000l. to 7000l. The defendant's counsel made a question, whether the evidence supported the action and declaration; and it was agreed on both sides that the point should be reserved. By consent, the case went to the jury without any address by the counsel or charge by the court, and the jury found a verdict for the plaintiffs for $1269 and 41 cents.

A point of order arose between the counsel, on which side the argument should commence. The court referred them to the 24th rule of practice, which declares, that in arguing points reserved, the plaintiff's counsel shall begin the argument.

Mr. S. Levy for the plaintiffs. It will not be said, but that the merits of the cause were clearly with us upon the evidence. The verdict will be attempted to be impeached, for want of technical formality in the declaration.

*Indebitatus assumpsit* will certainly lie for work and labour; so of a *quantum meruit.* Bull. 128. The plaintiff will be intitled to recover on a general count, where a special assumpsit is also laid in the declaration, if he fail in proving the latter; Ib. 140, and the day laid in a parol contract is wholly immaterial. 1 Star. 21. 2 Star. 806. A general *indebitatus assumpsit* for money had and received, will lie, when a payment has been made on a contract which is put an end to; but if it continue open, the plaintiff must state the special contract and the breach of it. 1 T. R. 133. But the case of Brooke *et al. v.* White is similar in principle to the present. There goods were sold at two *months credit, to be paid for by a bill at twelve months, and the goods were not paid for after the expiration of [*355 the fourteen months; and it was adjudged, that the seller might recover in an action for goods sold and delivered; 4 Bos. and Pul. 330; and Mr. Justice HEATH in that case says, he had always understood, that when a contract was executory, the party must declare specially, but that when it is executed, he may declare generally. He cites a case in Wilson (probably Alcorn *v.* Esbrock, 1 Wils. 115,) as decisive on that point. It is presumed, that these authorities will obviate any objections that may be made on the ground of our not declaring in special *assumpsit.* And if there are any material defects in the declaration, which the defendant can now avail himself of, they must be urged in arrest of judgment. It may however be objected, that this work and labour was done not with a view to a certain recompence, but with a view to a legacy, and therefore the plaintiffs are not

intitled to recover; but to this we answer, that the services were done upon request, and that the testator actually promised payment, which removes all presumption on that score. 1 Espin. Dig. 87. Here has been no surprise. The defendant was fully apprized of the nature and extent of our demand, and adduced all the testimony which his defence admitted of.

Mr. C. Ingersoll for the defendant contended, that the declaration was defective in several material points, the promise to pay was laid as made to the *feme sole*, when she was married at the time; the request to pay, was alledged on a day after the suit brought, &c.

The Chief Justice reminded him, that the court were at present confined to the point reserved.

He resumed his argument. The defendant was taken by surprize, in the present form of action: he should have received notice by the declaration, that he was sued upon a special contract. Doug. 24, *per* Lord MANSFIELD. Where there is a special agreement, the plaintiff cannot go on a general *indebitatus assumpsit*. Stra. 648.

On a note to repay money with interest, upon payee transferring to him stock, no tender of stock after the death of the party can make this an absolute debt, recoverable in *indebitatus assumpsit*. Ib. 653.

*Assumpsit* lies against an executor, on a promise made by the testator. 10 Co. 77. a. *Indebitatus assumpsit* lies for work done, on a *quantum meruit*, the law implying a promise. 3 Bla. Com. 159. 161.

*356] \*No sum certain was agreed to be paid for the services of Hannah: the plaintiffs must therefore rely on the *quantum meruit*, wherein the law implies a promise, to pay a reasonable sum. If reliance is had on this count, the statute of limitations will certainly apply to the whole demand; because she left her father, upon his marriage in 1782. But her demand begins in 1769, when she came of age. The statute must run to the several periods, when the services were performed; and the promise must refer to the times of performance. But if reliance is placed on the express promise of the father to make compensation, the consequence inevitably follows, that the declaration is vicious for not stating the special contract precisely. On the express promise, a special *assumpsit* should have been brought. In a special *assumpsit* to do an act at a future day, performance of it must be precisely alledged, and *quod semper paratus fuit* is not sufficient. Cro. Jac. 583.

The present case falls within the principle of one doing work in expectation of a legacy; in which instance the party shall not recover. 2 Stra. 728. The payment was to be made at the death of the father; and the promise must refer to a future provision for Hannah, by his last will. Our act of 1705, 1 Dall. St. Laws

53, contains a clause, which is borrowed from the British statute of 29 Car. 2, that nuncupative wills shall not supersede wills in writing, and shall only take effect in certain specified cases.

Suits like the present, between the members of a family, ought not to be favoured. They tend to the injury of honest creditors, and open a wide door to fraud and collusion. The mischiefs arising from such actions, if encouraged, are incalculable. We have seen in a late instance, where a suit was brought in the county of Northumberland, against the personal representatives of Samuel Wallis deceased, that a most enormous sum was found by referees to be due to a person for services, and that report sanctified by the judgment of a court of justice. Servants' wages are classed with physic and funeral expences, as to priority of payment of the debts of a deceased person, under the 14th section of the act of 19th April 1795. 3 Dall. St. Laws 527. And if this party shall be so fortunate as to establish his claim to the sum found due to him in that light, he will reap an advantage by a gross trick over fair creditors, under colour of law, to which the feelings of every honest mind will be opposed.

TILGHMAN, C. J. after detailing the case and facts minutely, delivered the unanimous opinion of the court as follows:

Several objections have been taken to the declaration. I do not conceive that those objections can properly be urged on this argument, because the question now before us is not, whether *the declaration is good, but whether it is supported by [*357 the evidence. If it is fundamentally bad, the defendant may hereafter move in arrest of judgment. I very much doubt, however, whether any defect which has been pointed out is fatal.

The act of limitations has been insisted on. It does not appear that any point on the act of limitations was reserved. But supposing there was, the promise made by George Castor in 1797, being within six years before the action brought, was sufficient to take the case out of the act of limitations.

The only question is, was the declaration so unsupported by evidence that the judge who tried the cause, might properly have directed the plaintiff to be *non prossed.* The defendant's counsel contend, that the promise proved was express and special, and that the declaration should have contained a special count. As to an express promise being proved, I can see nothing in that which is variant from the declaration; it states an express promise. Now, though a promise raised by implication of law, supports such a declaration, yet certainly, it is equally well supported by an actual promise; and nothing is more common than to give actual promises in evidence, in declarations of this kind.

There is another objection of more weight, which is, that the promise was of a particular kind, to pay after the death of George Castor. Undoubtedly this promise is not exactly agreeable to the one stated, which is, to pay when request should be made by

[Snyder and Wife *v.* Castor's Adm'r.]

the plaintiffs. But objections of this kind, foreign to the merits of the dispute, are not to be favoured; we are not to yield to them unless founded on well established principles. If an action had been brought during the life of George Castor, the plaintiffs could not have supported it, because it would have been in direct opposition to the promise. But the day of payment having arrived before the action was brought, the right of the plaintiff was complete; and I think myself authorized to say, that in such case, according to the principle laid down in Brooke *et al. v.* White, the plaintiff may alledge in his declaration that the defendant promised to pay when required. 4 Bos. and Pul. 330. No injury is done to the defendant by this mode of declaring, because the plaintiff must fail, unless he proves that the money was due before the action brought.

The defendant's counsel has painted in strong colours the mischiefs which may flow from a collusion between parent and child, when there is not an estate sufficient to answer the just demands of strangers. There is no doubt but much mischief may happen, unless transactions of this kind are watched with a jealous eye; but in the present instance there is no interfer-
*358]   *ence with the claims of other creditors; and whenever a case shall arise, where, from the circumstances, there is reason to think that a parent promises wages to his child for past services, with a view of screening his estate from the just demands of other creditors, and where it was not originally agreed that the child should be paid for such services, such promise will be adjudged fraudulent and void.

It has been urged by the defendant's counsel, that if a person serves another through expectation of a legacy, in which he is disappointed, he cannot support an action. The law certainly is so, but cannot be applied to a case, where the person for whom the service was done promises to pay for it; and it is immaterial whether the promise be made before or after the service.

Upon the whole, we are of opinion, that the court could with no propriety have ordered a nonsuit on the trial of this cause; and the jury who heard the evidence, having found for the plaintiffs, their verdict must stand.

Judgment for the plaintiffs.

Followed in 2 Binn. 70.
Cited in 30 Pa. 300 to show that before the year 1807, exceptions to the merits either in fact or in law, of an auditor's report in account-render, had been allowed in a very few cases; but the Supreme Court then determined that thereafter such an innovation upon the rules of the action would not be tolerated.
Cited in 71 Pa. 69 in support of the proposition that if a person serves another through the expectation of a legacy, in which he is disappointed, he cannot support an action.