JILSON, Executor, etc., vs. GILBERT and another.

(1–4.) CONTRACT—CONSIDERATION—STATUTE OF FRAUDS: *Promise to reward past services by testamentary provision.*

(5.) STATUTE OF LIMITATIONS: *When it begins to run on such promise.*

(6.) PROMISSORY NOTE—EVIDENCE: *Oral proof of a certain agreement concerning a note, held not to contradict the note.*

1. A promise to pay for past services implies that they were rendered upon previous request; and such services are a good consideration for the promise.
2. Such promise, being based on an *executed* consideration, is not void by the statute, though not to be performed within a year.
3. No agreement is void as "not to be performed within a year," if, consistently with its terms, it *may* be performed within that period.
4. A promise to reward by a provision in the promisor's will, services previously rendered by the promisee, is therefore valid.
5. No cause of action arises in such a case (and therefore the statute of limitations does not begin to run) until after the death of the promisor.
6. In an action on a note executed by defendant to plaintiff's testator, proof of an agreement between defendant and said payee that the note was to be surrendered to the former at the death of the latter, in satisfaction for services rendered to payee by defendant, does not contradict the note, and is admissible.

APPEAL from the Circuit Court for *Jefferson* County.

Action on a joint and several note of defendants for $100, made March 28, 1855, payable to Hannah Peck (afterwards Hannah Pierce, who was plaintiff's testatrix) or bearer, on or before April 1, 1857, with interest at twelve per cent. The complaint alleges that no payments had been made on the note. Answer: 1. That the note was for the individual debt of the defendant *Levi P. Gilbert*, and that the

other defendant, *William T. Gilbert*, signed it as surety in fact. 2. That the cause of action did not accrue within six years next before the death of plaintiff's testatrix. 3. The general denial of all averments of the complaint not thus admitted. 4. That the note had been paid and was to be surrendered to defendants. 5. That at about the time of the giving of the note, *Levi P. Gilbert* performed services for the payee in the collection and settlement of a large claim which had been long in litigation and unsettled, which services were well worth $100; that said note was given for a part or all of one of the installments collected by him on said claim; and that it was finally agreed between said payee and said defendant that he should be allowed $100, which sum was to apply in payment of said note, and that at her death the note was to be surrendered to him, and that until her death he was to pay her "an amount equivalent to the common rate of interest on $100;" that she was to hold the note till her death, and then surrender it to him; that she made and exhibited to him, as a part of the agreement, her will and testament, in which she bequeathed to him said note, to be surrendered up and cancelled; and that she agreed in case she should change said will or make a new one, that she would retain or insert therein said legacy. Reply, in denial, and setting up the statute of limitations against said defendant's claim for services.

At the trial, the note was put in evidence, with payments of $12 annually indorsed thereon up to March 29, 1860, and also with an indorsed receipt for interest in full up to March 28, 1868; which last indorsement was made by the plaintiff. It was conceded that *William T. Gilbert* signed the note as surety in fact. *Levi P. Gilbert*, as a witness for the plaintiff, testified that Mrs. Pierce held two notes against him, the one in suit and another for the same amount, and he did not owe her any other moneys than such as were

due on these two notes; that he had paid the other note in full since her death; that he had sent her money within the last six years more than enough to pay the interest on the other note; that he was to pay an annuity instead of interest on the note in suit. On cross-examination he was asked to state the contract between him and the deceased, concerning the payment or cancellation of the note in suit; but the question was ruled out. He then testified: "I sent her money to pay interest on the other note, and smaller sums to apply on the agreement or annuity which I made with her, and not any on this note. We talked about taking up this note and putting it in the form of an annuity, but she had not the note with her. There was no agreement about paying interest on this note. I understood my payments to apply on the contract or annuity. On this annuity I agreed to pay her the current rate of interest."

The defendants then called a witness and offered to show by him that the deceased made the agreement and the will alleged in the answer; but the evidence was ruled out.

Each of the defendants requested the court to instruct the jury that the note was barred by the statute of limitations and not binding upon him; but the instruction was refused. The court charged the jury that under the pleadings and the defendant's statement that he owed the plaintiff's testatrix nothing but this note and another, if they should find that, within six years before the commencement of this action, the defendant overpaid the other note and interest, and made payments as interest over and above paying the other note, they must find for the plaintiff.

Verdict for the plaintiff; new trial denied; and defendants appealed from a judgment on the verdict.

*L. B. Caswell*, for appellants:

1. *Wm. T. Gilbert* made no payments on the note, and as to him it was barred by the statute of limita-

tions. R. S. ch. 138, secs. 39, 42; 1 Kern. 176. 2. A renewal by part payment can only be when the maker intended to apply the payment as it was applied. An application by the executor, of moneys paid by *Levi P. Gilbert* to the payment of the note in suit, against the will and intention of the defendant, had no such effect. *Shoemaker v. Benedict,* 1 Kern. 185. If the payments were made in fact, in pursuance of the agreement set up in the answer, they could not have the effect to renew the note in suit, even though that agreement was void. 3. The new agreement did not contradict the note, but was an accord and satisfaction. *Jones v. Keyes,* 16 Wis. 562; 7 Cow. 224; 16 Johns. 86; *Coit v. Houston,* 3 Johns. Cas. 243; 13 Wis. 212. 4. Services rendered under promise of compensation by will, create a good claim against the estate if no will be made. *Martin v. Wright,* 13 Wend. 460; *Eaton v. Benton,* 2 Hill, 576; 3 Johns. 199; 13 id. 379. 5. The note being joint and several, the counterclaim could be set up in favor of one defendant. R. S. ch. 125, sec. 11; 8 How. Pr. 151, 454; 20 Barb. 477.

*Weymouth & Porter,* for respondents:

1. The testimony as to the agreement set up in the answer was properly rejected. It is a well established principle, that " written agreements are not to be controverted, varied or materially affected by oral testimony." *Erwin v. Saunders,* 1 Cow. 249. 2. An agreement by Mrs. Pierce to will the defendant a sufficient amount to pay this note, cannot be pleaded as a set-off against the note : (1.) Because it cannot be enforced at law, as a person has a right to destroy one will and make another at any time. (2.) Because such an agreement, made simultaneously with the note, could not alter the written contract. (3.) Because the agreement, if binding when made, was barred by the statute of limitations. 3. The balance of the defendant's payments, after paying the

first note, must be applied upon this note, as there was nothing else due Mrs. Pierce from them. *Gilbert's* own testimony shows that the talk about taking up this note, and putting it into the form of an annuity, was never carried out.

DIXON, C. J. The agreement set up in the answer was not within that branch of the statute of frauds relating to agreements not to be performed within one year, nor had the statute of limitations run upon it; and neither was it an agreement varying or contradicting the terms of the note. The agreement was not within the statute of frauds, for two reasons. In the first place, it was made upon an *executed* consideration. The services rendered by the defendant *Levi P. Gilbert*, and for which it is alleged the testatrix agreed to pay, had been performed before the promise was made; and past services are a sufficient consideration to support a promise to pay for them. It is immaterial whether the promise be made before or after the services. *Snyder v. Castor's Adm'rs*, 4 Yeates, 353–358. The subsequent promise to pay implies that the services were rendered upon previous request. The consideration for the agreement having been thus fully executed on the part of the defendant with whom it was made, and before the making of it, the fact that the time of payment extended or might extend, even if it had been expressly so provided, beyond the year, would not bring the promise within the statute, as has just been decided in *McClellan v. Sanford, ante p.*

But more than this, the promise was not by its terms to be performed beyond the year, which is the other reason why it was not within the statute. "The contract, to be within the statute," say this court in *White v. Hanchett*, 21 Wis. 416, must be such that it *cannot* be performed within a year." By this was not intended, of course, a natural or physical impossibility, but an impossibility by the terms of the con-

tract itself, or by the understanding and intention of the parties, as shown by the contract. The statute includes only such agreements as, fairly and reasonably interpreted, do not admit of a valid execution within the space of a year from the making. If, by possibility, an agreement may, by its terms, be executed within that time, it is not within the statute. An agreement or promise, therefore, the performance of which is contingent upon the duration of human life, is not within the statute, because by the death of the person within one year, upon the happening of which the performance is to take place, a valid execution or performance may be had within that time according to the very terms of the contract. The fact that the performance may thus, by possibility, be required within the year, relieves the contract from the operation of the statute. And this construction of the statute is sustained by numerous decisions, with none to the contrary so far as I know. *Anonymous,* 1 Salk. 280; *Peter v. Crompton,* Skin. 353; *Fenton v. Emblers,* 3 Burr. 1278; *Peters v. Westborough,* 19 Pick. 364; *Lyon v. King,* 11 Met. 411; *Worthy v. Jones,* 11 Gray, 168; *Doyle v. Dixon,* 97 Mass. 208; *Ridley v. Ridley,* 34 Beavan, 478; *Updike v. Ten Broeck,* 32 N. J. Law R. (3 Vroom) 105; Brown on Frauds, §§ 273–276, and the cases referred to.

*Fenton v. Emblers* was a case like the present, in that it was a promise to reward a party for services by a legacy, or provision to be made in a will. In that case, the defendant's testator had promised the plaintiff that if she would become his housekeeper, he would pay her wages after the rate of £6 per annum, and give her, by his last will and testament, a legacy or annuity of £16 by the year, to be paid yearly. The plaintiff, on this agreement, entered into the testator's service, and became his housekeeper, and continued so for more than three years. The contract was by parol, and objection was taken to it that it was

within the statute, and invalid; but the court held otherwise. Mr. Justice Dennison, with whom the other judges coincided, declared his opinion to be, that the statute plainly means an agreement not to be performed within the space of a year, and expressly and specifically so agreed; that a contingency was not within it, nor any case that depended on a contingency; and that it did not extend to cases where the thing might be performed within the year.

And in *Ridley v. Ridley*, in the Rolls court, where the decision was by Sir John Romilly, M. R., who is certainly very high authority, the point is thus correctly stated in the note: " That part of the fourth section of the statute of frauds (29 Car. 2, c. 3), which requires agreements, not to be performed within a year, to be in writing and signed, does not apply to cases in which the performance may by possibility or accident be extended beyond that period; it is to be confined to cases where the agreement is not to be performed and cannot be carried into execution within that space of time. Therefore, where A. B. agreed by parol for valuable consideration to leave C. D. a certain amount by his will, and A. B. died fourteen years after the agreement: *Held*, that the statute of frauds did not apply."

And the same construction, if not expressly, is certainly impliedly, sustained by many other cases in which it has been held that services rendered under promise of compensation by will, create a good claim against the estate, if no will be made. Such was the recent case in this court, of *Bayliss v. Estate of Pricture*, 24 Wis. 651, where the agreement was made in March, 1857, and the plaintiff continued to serve under it from that time until November, 1863, and Pricture died in May, 1867, not having made compensation by a legacy, as he had agreed, and a recovery against the estate was sustained. And see also, *Martin v. Wright's Adm'rs*, 13 Wend. 460; *Jacobson v. Executors of Le Grange*, 3

Johns. 199; *Patterson v. Patterson*, 13 Johns. 379; *Eaton v. Benton*, 2 Hill, 576; *Little v. Dawson*, 4 Dallas, 111; and *Snyder v. Castor's Adm'rs, supra.* In the latter case, it will be observed that the promise or declaration of the intestate that the plaintiff should be paid for her service after his death, was not made until some years after the service was rendered. And in *Patterson v. Patterson*, it was shown that the defendant, who was the father of the plaintiff, had said that he intended to reward the plaintiff well, that he was old, and that the plaintiff must continue with him as long as he lived, and he would reward him well, and that he should have the farm, paying legacies to his other children. It was also shown that the defendant 'had said he intended to give the plaintiff $750 for his services, and had provided for it in his will, and that he should share equally with the other children. A will duly executed by the defendant was likewise produced in evidence, by which it appeared that he had ordered $750 to be paid to the plaintiff, and the residue of his property to be divided equally between his children. The court said it was evident from the testimony, "that the plaintiff was to be compensated for his services by a provision to be made for him by his father (the defendant), in his will; and of course, that no claim for compensation was to be made in his father's lifetime. The defendant is bound to make, and it is presumed will make, such a provision for the plaintiff by his will, as will do him perfect justice, and which may be perfectly satisfactory to him, or which in judgment of law may amount to a satisfaction. Should the defendant wholly overlook the plaintiff in his will, this would be such an act of injustice, *that there can be no doubt the plaintiff might maintain an action, and recover a reasonable compensation for his services.*" This was the clearest possible recognition of the validity of such agreements, and that they are not within the statute of frauds.

And as to the claim or demand of the defendant being barred by the statute of limitations, it is entirely clear it is not. The day of payment did not arrive until the death of the testatrix, and no cause of action occurred until that time, and until it appeared that she had failed to make the testamentary provision agreed upon. The defendant had, therefore, no right of action until after her death, which appears to have accrued after March, 1868; and hence his counter-claim or right to set off the value of his services, or to show payment in that way of the principal sum due upon the note, cannot be defeated on this ground.

And the other objection, that the agreement varied or was inconsistent with the terms of the note, seems equally untenable. It was no more than an agreement showing how the note had in fact been paid, and how upon the death of the holder it was to be surrendered. If evidence had been received under the answer, as offered by the witness Hickox, and the answer sustained, it would have been proof of payment, or of an accord and satisfaction, by which the principal sum due had been liquidated and the debt extinguished. The case differs somewhat in facts, but not at all in principle, from *Jones v. Keyes,* 16 Wis 562, and *Peterson v. Johnson,* 22 Wis. 21, and cases there cited. See also, *Racine County Bank v. Keep,* 13 Wis. 209. Or, if we view it in another light, and as an agreement to pay the defendant for his services in that particular way and at that time, it seems still less in conflict with the terms of the note, and the right of set-off is very obvious. It would be very strange were it to be held that the defendant must lose all right of compensation for his services, which the testatrix agreed to make, because such was the form of the agreement. Proof of the services and of the agreement, proves payment, and that this constitutes a valid defense to the action we think there can be no manner of doubt.

But if the law were otherwise with respect to the agreement, and it was invalid, or barred by the statute of limitations, or incompetent to be shown as a defense to the note, the judgment would still have to be reversed for error in the instructions to the jury. To meet the answer of the statute of limitations set up by the defendants in bar of the action upon the note, and to take the case out of the operation of section 41, chap. 138, R. S., the plaintiff called the defendant *Levi P.*, the principal in the note, his co-defendant being surety, as a witness to prove that the sums indorsed upon the note as payments of interest were in fact paid by him to the testatrix. The witness testified that he paid her the money, but not as interest upon the note, but in pursuance of the agreement set forth in his answer, and as an annuity to her during her lifetime, equivalent to the rate of interest specified in the note. He said: "I sent her money to pay interest on the other note, and smaller sums to apply on the agreement or annuity which I made with her, and not on this note. We talked about taking up this note and putting it in the form of annuity, but she had not the note with her." And again he testified: "There was no agreement about paying interest on the note. I understood my payments to apply on the contract or annuity. On this annuity I agreed to pay her the current rate of interest." A formal offer was made by the defense to prove by the same witness the agreement set up in the answer, but that was rejected, and probably because it was not competent for him to testify to it, the other party to the agreement being dead. But the foregoing testimony was received without objection, and under the circumstances stated. Upon this evidence, which was all there was of payment in fact of the sums indorsed upon the note, the court instructed the jury that "under the pleadings in this case, and the defendant's statement that he owed Mrs. Peck nothing but this note

and another, if you find that within six years before the commencement of this action the defendant over-paid the other note and interest, and within the six years made payments as interest over and above paying the other note, you must find for the plaintiff." To this instruction the defendants excepted, and we think it was in any view erroneous. Conceding the agreement between the defendant and testatrix not to have been valid or binding, still, so far as it had been acted upon by the parties and money paid in pursuance of it (and this was in evidence before the court—proved in fact by the plaintiff himself), it seems to us to have been error to withdraw it or the evidence from the consideration of the jury upon the point in question, namely, whether the money paid was paid as interest on the note or not. If, acting upon the agreement and treating it as valid, the money was paid upon that or as an annuity, and not as interest on the note, then it is manifest that such payment did not have the effect of taking the note out of the operation of the statute. It is the intention of the party paying, which decides the character or effect of payment under such circumstances, provided such intention be known to the party receiving the money. If the testatrix received the money upon the agreement, of which its existence, if established, would constitute very strong evidence, then it was no payment upon the note, and, of course, did not relieve the plaintiff from the bar of the statute. It was competent, therefore, for the jury to consider the evidence upon this point; and it should have been submitted to them under proper instructions to say whether the payments were made on the note or on the agreement, and if they found the latter, then that the action was barred.

*By the Court.*—Judgment reversed, and a *venire de novo* awarded.