## Thompson, Executor of Shalkop, *versus* Stevens.

1. On a trial an attorney, in discussing a question of evidence, stated in the hearing of the jury matters not evidence; the court refused the motion of the other side to withdraw a juror. *Held*, to be in the discretion of the court below, and not reviewable on error.

2. In an action for services of plaintiff in nursing, &c., a feeble man, *Held*, proper to ask a witness whether plaintiff's appearance did not show her constitution broken down by her duties.

3. Contracts with nurses, housekeepers, &c., sought to be enforced after

[Thompson *v.* Stevens.]

the death of the person to whom the services were rendered, ought to be very closely scanned, and juries instructed that they could be made out only by very clear proof.

4. The correction of verdicts not founded on such proof, or unreasonable in amount, is confided to the sound legal discretion of the court below.

5. Such contract must possess the element of certainty.

6. The maxim, *Id certum est quod certum reddi potest*, applied.

7. The promise to the plaintiff was, "If she would stay with him as long as he lived, he would provide and give her full and plenty after he was gone, so that she need not work." This was sufficiently certain and definite.

8. The measure of amount would be what would keep her without work, taking into consideration her condition in life.

9. Where services are gratuitously rendered under expectation of a legacy, there can be no contract and therefore no recovery for the services.

10. Where one does services on request, no matter what his expectations were, there may be a recovery for them.

11. Graham *v.* Graham, 10 Casey 475; Sherman *v.* Kitsmiller, 17 S. & R. 45; Roberts *v.* Swift, 1 Yeates 209, remarked on.

March 1st 1872. Before AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No 145, to July Term 1871.

This was an action of assumpsit, brought April 29th 1870, by Rebecca M. Stevens against John P. Thompson, surviving executor of Abraham Shalkop, deceased.

The declaration was in the common counts. The bill of particulars was as follows:

Plaintiff's claim is for services rendered to Abram Shalkop as housekeeper, nurse, and confidential business agent, for ten years prior to his death, at one thousand dollars per year, $10,000.

The pleas were non assumpsit and payment, and the Statute of Limitations.

The case was tried June 2d 1871, before Lynd, J.

The evidence for the plaintiff was that about the year 1861, she went to live with decedent, and lived with him till his death, February 24th 1870: he was then eighty-seven years old; that besides the feebleness of age, he had fallen and injured himself, and during the time she was with him had had a paralytic stroke. The wife of the decedent had died six or seven years before him: before the wife's death the plaintiff helped to do all the general housework and afterwards took charge of the house, "the same as any one would be as a wife:" that she attended to his money affairs; and transacted business with those who came to see him, about it; by reason of his paralysis his speech was affected so that he could not be understood by those coming to see him, and she had to interpret; that she also nursed him, put him to bed, and attended to him generally; some of the duties performed in doing this were very offensive and laborious, doing "what it took a man's strength to do."

There was evidence that he said if she would stay with him he

[Thompson v. Stevens.]

would reward her for it in the future; that she had been a very good girl, and he intended to provide for her after his death so that she need not want: that she was a good girl, he could trust her and wished her to stay with him while he lived; if she stayed with him he would reward her at his death; he would provide well for her if she would stay with him: that he said: "I cannot spare her; if she is not able to do the work, but stays here and sees to my house, and if she is never able to work again, she will have plenty to live on; I intend to provide abundantly for her, that she may have plenty to live on after my death, if she is not able to work."

One witness testified: "He asked if I thought Rebecca would stay, and I told him I did not know, she must decide for herself. He said if she would not stay, he would have to break up house-keeping. I told him to ask her, and he said he would ask her, and he did ask her; and he said then that, if she would stay with him as long as he lived, he would provide and give her full and plenty after he was gone, so that she need not work. * * * And he said he never had anybody that done like she did—never; and I says, then, if she is a good girl why don't you do something now; and he said I will never set her any wages. I will give her full and plenty when I am gone; there is enough for the others, plenty for all. I will give her plenty then; and I told him, well, he ought to do it now."

Another witness testified: "He told her he would leave her independent of all work, when he was dead; he cried on and off during the day, for fear she would go; towards afternoon she promised she would stay."

Another said: "He told me that he could trust her with anything; and in a conversation we had at one time that she talked of going away, he didn't want to lose her; that he could not do without her; that he wanted her to stay with him until he died, and after his death he would leave her comfortable; leave her enough to keep her without work; I think he told me that in two instances."

In the course of the trial, in a discussion on admissibility of evidence, as to the extent of the decedent's estate, one of the counsel with the plaintiff said: "I want to show that this old gentleman was worth $150,000; that his interests were scattered far and wide, that he was exposed to the peril of constant impositions, if he had not precisely this sort of care. I want to do that as part of the measure of compensation."

The defendant's attorney moved to withdraw a juror, on the ground that the counsel had made a statement of what was inadmissible as evidence. The court declined to withdraw a juror, and sealed a bill of exceptions.

The defendant gave in evidence the will of the decedent, dated

December 21st 1867, by which a legacy of $2000 was bequeathed to the plaintiff, and proved that the executors had paid it to her, less the collateral inheritance tax.

They called a number of witnesses to show the character and value of her services, and generally in answer to the plaintiff's case. On cross-examination the plaintiff asked one of the witnesses: "Whether her appearance did not show her constitution broken down by her duties at that time." The question was objected to by defendant, admitted, and a bill of exceptions sealed.

There was evidence also tending to show that the services were rendered in expectation of being remunerated by a legacy.

The defendant requested the court to charge:

1. That if the jury believe, from the evidence, that the services rendered by the plaintiff to the decedent, were rendered in the expectation of being compensated by a bequest or legacy, she cannot recover.

2. That if the jury believe, from the evidence, that the services of the plaintiff were rendered in part in expectation of a legacy, which she has actually received, she cannot recover further.

5. That under no circumstances can the plaintiff recover for any services rendered more than six years before the commencement of her action.

6. That if the jury believe that the services of the plaintiff, after deducting payments to her, were not worth more than the amount of her legacy, the legacy is presumed to be a satisfaction of the debt.

7. That if the jury believe from the evidence that the services of the plaintiff were rendered under a contract to be compensated by a legacy, the amount of compensation was discretionary with the testator, and the plaintiff can recover no more than the legacy given her by his will.

8. That if the services were to be compensated by a legacy, the plaintiff cannot recover unless no compensation were made by the will.

9. That if the jury believe, from the evidence, that the plaintiff remained with Abraham Shalkop until his death, and performed services for him under a promise by him that, as regards payment for such services, he would make it all right in the future, that he did bequeath to her a legacy of two thousand dollars by his will, and that she accepted said legacy; then the law will treat the acceptance of the legacy as in satisfaction of whatever the testator may have been indebted to her for her services, and the plaintiff cannot recover.

The court charged: * * * "If there were nothing more in the case than simply that this plaintiff entered into the employ of the decedent, seven or more years ago, without any definite arrangement between them as to the amount of wages, or as to time for

compensation, then the law would imply that she was to be paid what her services were fairly worth; that would be for you to determine; and the law would imply that she was to be paid for these services, from time to time, as they were rendered. In the event of the merely implied contract between the parties, the plaintiff could not recover for the *whole* time of her services, because here the Statute of Limitation steps in, and limits her recovery to what her services were worth during a period of six years prior to the time of suit brought. * * * But, this matter of the Statute of Limitations, to which I have just adverted, will, perhaps, not be of any great importance in one view that I take of the law, and that you may take of the fact. Now, so much for the doctrine of implied contract, provided there were no allegations and no proofs on the other side setting up an express contract. [But, if I understand the facts before you, both parties maintain that there was an express contract in this case.] If that be true, and you so find it, then what I said about implied contract becomes of little or no consequence. The plaintiff, if I understand it right, maintains that there was an express contract. That this old gentleman again and again declared to others, who communicated it to her, that if she would continue with him and serve him, that he would provide for her abundantly at his death, or that he would make such provision that she would never have to work any more. * * * Now, the defendant, on his part, also says there was an express contract, and, if I understand him aright, he says the contract was that this young lady was to remain in his employ and serve him as she had done him before the wife's death, and that her compensation was to be such a legacy as he might choose to leave her; that she agreed to serve him, trusting to his generosity to make it right at his death. Now, gentlemen, these are the two opposite express contracts which are alleged here by the opposing parties. * * * [Either of these contracts would be entirely valid in law.] It is entirely competent for a man to agree to pay another man for services, at a rate vastly above what the services are worth, [and if, in this particular case, you shall find, that the testator agreed to pay this young lady for her services, by making such provision in his will that she should be under no necessity after his death to labor for her livelihood, or to make an abundant provision for her by his will, then, in law, his estate must answer for that undertaking, though it should take the whole of it.] On the other hand, if she agreed to work for the decedent, trusting entirely to his generosity for such a sum as he might choose to bequeath to her in his will, then she is bound by her contract to the sum of two thousand dollars that he left her, she would have to be satisfied with, if that is the contract. * * * There is another question that I have not yet adverted to, growing out of this two thousand dollar legacy. That the decedent left the plaintiff a legacy of

[Thompson *v.* Stevens.]

that amount, and that she received it, are not disputed. But the defendant alleges that said legacy was left by decedent as and for the provision that he had contracted to make for her, and say that that legacy was in full, as, if their view is correct, it necessarily would be; but the plaintiffs, under their view of it, say that it was part payment of what was due. * * * There are two ways, gentlemen, of proving that a legacy is payment of the debt. The one is by the will itself, and the other is by evidence or circumstances outside of the will. Now, as far as the will itself is concerned [I instruct you as a matter of law. There is nothing in the will itself that makes this legacy other than a pure gratuity, and, if there is nothing outside of the will you will then make up your verdict as though there was no such thing as a legacy in the case.] * * * There is evidence from which you may be able to find that there was an intention on the part of the testator, that the legacy should be in payment of what he owed her. The very contract on which the plaintiff relies, that is to say, a contract to compensate her fully at his death, or by his will, would be sufficient to justify you in finding such an intention; and there may be other facts in the case from which you may find his intention. But what his intention was in leaving this legacy, whether as a pure gratuity, or as payment either in whole or in part, is a question of fact entirely for you. If you find that there was such an intention on the part of the testator in giving this legacy, and that the defendant's view of the contract between the parties is a correct one, that is to say, that he was to fix an amount, that it was to be discretionary with him as to how much he would pay her by his will, then the $2000 is in full; but if you find such an intention on his part, and yet that the plaintiff's view of the contract is correct, that he was to make such a provision for her as would relieve her from the necessity of working in after life, or such other abundant provision as you may find from the expressions used by the witnesses he appears to have promised her, then these $2000 will merely go upon account, and will still leave you to determine from the whole case how much her entire services to the decedent were worth. Now, I repeat, gentlemen, that whether this legacy is to be considered by you at all in working up your verdict, will depend upon whether from facts outside of the will, you arrive at the conclusion that it was the intention of the testator, in leaving these $2000, to leave it as payment, and not as a pure gratuity. * * *

"[If you find from all the evidence, the contract was, particularly, as one of the witnesses states it was, to provide for her at his death, that she should not be under necessity of laboring during the rest of her life, you will be justified in then determining what sum would be adequate for that purpose, and your verdict will be for that sum.] If you find, however, that the contract, as alleged by the defendants, was the real contract between them, then the

[Thompson *v.* Stevens.]

testator has fixed the sum. If she intended to rest upon his generosity, and that was the arrangement between them, then she must rest under whatever disappointment she may, but still the sum bequeathed to her is the only sum which she can recover. * * *

In answer to the defendant's 5th point the court said :

" If you find that there was no express contract at all between the parties, and you make up your verdict upon the general basis of what her services were worth to the testator, then you can only find their value; you cannot go back of six years prior to the commencement of the suit. All her services beyond that she must lose. That is, upon the ' general *quantum meruit;*' but if you find, and if you conclude, from the evidence, that there was an express contract between the parties, not only so, but that express contract, as the plaintiff maintains it to be, to wit: the old gentleman agreed to compensate her, either fully or otherwise, at his death, or by his will, which would be the same thing; then her right of action did not accrue until his death, and she would have six years from his death in which to bring her action, if you please, at all events brought in that time; but her action has been brought in proper time. But in this action, as brought, she cannot recover for more than six years' services. She can recover for the entire service in pursuance of the express contract to which I have alluded, if you find such an express contract."

In answer to the 7th and 8th points, the court charged:

" That depends upon the exact nature of the contract, which I have already said to you. If the contract between them was, that he was to compensate her at his death, or by his will, then the law of the contract obliged him to leave her such a sum as would amount to a compensation. If the contract was that she was to rely entirely upon his generosity, then it would be discretionary with him to leave her what he pleased."

The other points of the defendant were refused.

The verdict was for the plaintiff for $10,000.

The defendant removed the record to the Supreme Court and there assigned for error:

1. The refusal of the court to withdraw a juror.

2. Admitting the evidence objected to.

3-7. The parts of the charge in brackets.

8-16. The answers to the points.

· *J. A. Clay* and *G. W. Thorn* (with whom was — *Potts*), for plaintiff in error.—The part of the charge which said, the testator must answer for his contract if it took the whole of his estate, was erroneous, as giving no definite rule for the measure of damages: Ewing *v.* Thompson, 16 P. F. Smith 382 ; Malaun *v.* Ammon, 1 Grant 123; Hertzog *v.* Hertzog, 10 Casey 418; McNair *v.* Compton, 11 Id. 23. The measure was the value of the services.

[Thompson v. Stevens.]

There is nothing sufficiently definite in the contract: Graham v. Graham, 10 Casey 475. For services rendered in expectation of legacy there can be no recovery: Little v. Dawson, 4 Dallas 111; Osbourn v. Guy's Hospital, 2 Strange 728.

*J. Dolman* and *T. Cuyler*, for defendant in error.—The contract is sufficiently definite: Ridley v. Ridley, 11 Jur. (N. S.) 475; Sherman v. Kitsmiller, 17 S. & R. 45. Expectation to be compensated by a legacy did not preclude an action on the contract: Roberts v. Swift, 1 Yeates 209.

The opinion of the court was delivered, May 13th 1872, by
Sharswood, J.—The 1st assignment of error, that the learned judge refused to withdraw a juror, is a matter which is exclusively within the discretion of the court below and not reviewable here. The 2d error assigned is in permitting a witness to be asked whether the plaintiff's appearance did not show her constitution broken down by her duties at that time. Certainly, if the offices performed by the plaintiff were of such a character as necessarily to be injurious to her health, it was a fair element to be taken into consideration in determining what her services were worth. The other errors assigned are to the charge and the answers to the points, and need not be separately considered. They present substantially only two questions. First, Was there evidence of such an express contract as ought to have gone to the jury? And second, If the services were rendered in expectation of being compensated by a legacy, ought that to prevent a recovery?

As to the first question, it is undoubtedly true, that contracts of this character, by which the estates of deceased persons are called on to pay large sums to nurses and housekeepers, ought to be very closely scanned, and juries instructed that they can only be made out by very clear proof. The courts are especially justified in setting aside such verdicts, when not founded on proof of this character, or when unreasonable in amount. Yet these are matters not within the province of a court of errors. They are necessarily confided to the sound legal discretion of the tribunal before which the trial has taken place. Such a contract must of course possess the element of certainty, as was held by this court in Sherman v. Kitsmiller, 17 S. & R. 45, and Graham v. Graham's Executors, 10 Casey 475. But the maxim is, *Id certum est quod certum reddi potest.* In neither of the cases could that maxim be applied. In the first, the promise as set up, was to give the plaintiff 100 acres of land. One hundred acres of land where? worth how much? Five dollars an acre or five hundred? "The promise," said Mr. Justice Duncan, "is as boundless as the terrestrial globe." "The action only lies where a man by express words assumes to do a certain thing. Not that this means an absolute

[Thompson v. Stevens.]

certainty, but a certainty to a common intent, giving the words a reasonable construction. But the words must show the undertaking was certain; for, in assumpsit for non-payment of money, it is necessary to reduce the amount to a certainty; or on a *quantum meruit*, by an averment, where the amount does not otherwise appear. Express promises or contracts ought to be certain and explicit to a common intent at least. They may be rendered certain by a reference to something certain:" Sylvester's Case, Popham 148; 2 Roll. Rep. 104; 1 Leo. 88. In Graham *v.* Graham's Ex'rs., a promise to give the plaintiff, in consideration of services, " as much as to any relation on earth," was held to be indefinite. As our brother Williams said, in his opinion below, which was affirmed in this court: " The testator did not intimate what or how much he would give to *any relative he had on earth.*" Who could say how much that would be ? It depended on his own will, as if a man were to say, I will give you for these services just what I choose. In the case now before us, however, the contract as proved by Elizabeth Sheaf, and confirmed by the testimony of other witnesses was, that " if she (the plaintiff) would stay with him (the testator) as long as he lived, he would provide and give her full and plenty after he was gone, so that she need not to work." Now, certainly, here is a measure by which the amount can be ascertained, and which brings the case within the rule of certainty to a common intent. Consideration being had of the condition in life of the plaintiff, what annuity would place her in such circumstances that she need not work ? The annuity tables settle what such an annuity is worth or can be bought for. It is true, that this mode of arriving at the plaintiff's compensation does not appear to have been pursued on the trial below, but it was left to the jury generally. The supervisory power of the court over the verdict must be resorted to where the amount found is more than was reasonable under the circumstances. We see no error in the manner in which the plaintiff's right of recovery under the alleged express contract was submitted to the jury.

The second question may be briefly disposed of. Certainly where services are gratuitously rendered under the mere expectation of a legacy, there can be no recovery, for in such a case there is no contract at all: Little *v.* Dawson, 4 Dall. 111; Swires *v.* Parsons, 5 W. & S. 357. But in Roberts *v.* Swift, 1 Yeates 209, it was decided that if one does services for another at his request, no matter what his expectations were, assumpsit may well be supported to recover a compensation. And in Snyder *v.* Castor's Adm., 4 Yeates 353, it was said by Mr. Chief Justice Tilghman, in pronouncing the opinion of the court: " It has been urged by the defendant's counsel, that if a person serves another through the expectation of a legacy, in which he is disappointed, he cannot support an action. The law certainly is so, but cannot

[Thompson *v.* Stevens.]

be applied to a case where the person for whom the services was done promises to pay for it; and it is immaterial whether the promise be made before or after the service."

The plaintiff in error has not given in his paper-book a copy of the will of Abraham Shalkop, but if the legacy therein contained was given to Rebecca Stevens, by the designation of his house-keeper, and nothing more, we see no error in any of the rulings of the learned judge below upon that subject.

Judgment affirmed.

WILLIAMS, J.—I dissent from this opinion, on the ground that the alleged contract is as indefinite and uncertain in its terms as the contract declared invalid in Graham *v.* Graham's Executors.