De Camp *v.* Wilson.

---

WILLIAM H. DE CAMP, appellant,

*v.*

HENRY WILSON, executor, respondent.

A daughter and her mother, who was very old and infirm, lived together.—*Held*, that the former might recover compensation from the estate of the latter for services which were indispensable and rendered under circumstances that raised a presumption that she was to be paid, and that her mother intended to pay her therefor.

---

On appeal from the decree of the orphans court of Somerset county.

*Mr. J. D. Bartine*, for appellant.

*Mr. J. Schomp*, for respondent.

De Camp v. Wilson.

THE ORDINARY.

Exception was filed to a charge in the account of the executor, of $518, the amount of the claim of Catharine McCohn, for her care of, and attendance upon, the testatrix, her mother, for the last five years of the latter's life, and the expenses of the funeral of the testatrix, paid by the claimant. The objection was abandoned, however, as to that part of the claim which is for funeral expenses. The claim for services appears to be at the rate of $2.50· a week, or $130 a year, for the first two years of the period, and $80 a year for the rest of the time. The orphans court allowed the claim, and an appeal was taken from their adjudication. The testatrix, at the time of her death, was about ninety-three years old. About five years before she died, she had a fall, by which she was made permanently lame; so much so, that she was never, from that time, able to walk without assistance. She was almost helpless, and needed constant attendance. Her daughter Catharine, lived with her and took care of her. When Catharine, on one occasion, left her for a short time to make a visit, it was necessary to employ an attendant in her place.

It is urged, on the part of the exceptant, that there was no contract for compensation between the parties, and there appears, in fact, to have been no express contract. But it is evident that the daughter expected to receive compensation for her services, and the mother intended to make it. Mr. Wilson, the executor, testifies that the testatrix often spoke to him about the attention she was receiving from Catharine, and her desire that she should be paid for her services. He says that on an occasion when he, having in his hands about $1,100 belonging to the testatrix, as her share of the net proceeds of the sale of a farm in which she had an interest, went to her to pay it, she said she wanted to pay Catharine for her services, out of that money, but she did not do so, merely because of his unwillingness to assist in making the payment; his unwillingness being occasioned by his desire to pay over to her the whole of the money due

De Camp *v.* Wilson.

her without deduction, in order to avoid misapprehension or misunderstanding which might arise as to his own dealings in the matter, if the payment to Catharine of part of the money due to the testatrix, were part of the transaction. He further says that, some time afterwards, the testatrix sent to him, to rewrite her will, which she desired to alter so that she could "do something for Catharine, as she had done nothing for her yet." He dissuaded her from her purpose, by telling her that Catharine could bring in her bill against her estate for her services, and that the neighbors knew and could testify to their value. He says that, when he next came there, she seemed to have the matter of doing something for Catharine in her will, upon her mind, but he kept putting it off, and when, shortly before her death, she urged him to attend to the alteration of the will, he promised to do so the first of the next week, but, before that time arrived, she died, and, consequently, the alteration was not made.

It is urged, by the respondent's counsel, that this case is within the ruling of the cases in this state, notably, *Ridgway* v. *English, 2 Zab. 409*, and *Gardner* v. *Schooley, 10 C. E. Gr. 150*, in which it has been held that an emancipated daughter, residing under her father's roof, and being maintained by him, cannot, in the absence of an agreement, recover compensation for her services in the household. But in such cases, a recovery may be had if the circumstances are such as that a contract may be presumed therefrom. *Ridgway* v. *English, ubi supra.*

Where there is a request, that which might otherwise be regarded as a voluntary courtesy or benefit, will be considered as having been done in pursuance of the request, and a right to compensation will follow. *1 Esp. N. P. 87.*

In *Roberts* v. *Kidd's ex'rs, 1 Yeates 209, 212*, a suit by a niece against her uncle's executors, to recover compensation for services rendered in his family while she was a member of it, and supported by him as such, it was said that if the jury were satisfied, from the whole of the evidence, that the services were done at the request of the

De Camp *v.* Wilson.

testator, no matter what the plaintiff's expectations were, the action for compensation might be maintained, and the court held that the question of " request " was very properly left to the jury under all the circumstances.

In *Guild* v. *Guild, 15 Pick. 129*, the court were divided in opinion as to whether the law raises an implied promise of pecuniary compensation from the mere performance by an adult unmarried daughter residing in her father's house, of useful and valuable services, such as it is customary for daughters to perform ; but those of the judges who were of opinion that it did not, were, nevertheless, of opinion that it would be quite competent for a jury to infer a promise from all the circumstances of the case ; and that, although the burden of proof is upon the plaintiff, as in other cases, to show an implied promise, the jury ought to be instructed that if, under all the circumstances of the case, the services were of such a nature as to lead to a reasonable belief that it was the understanding of the parties that pecuniary compensation should be made, then the jury should find an implied promise, and *quantum meruit;* but, if otherwise, they should find that there was no implied promise.

In *Green* v. *Roberts's ex'rs, 47 Barb. 521*, where a daughter, after arriving at the age of twenty-one years, continued to be a member of her father's family, rendering services for him and receiving support from him, as before, there was no positive evidence of an express agreement, but the court said that there being in the case evidence tending to prove a mutual understanding that the plaintiff was to be paid for her services, while at the same time a different construction might be put on that evidence, it was properly left to the jury to say whether such understanding existed.

In *Updike* v. *Ten Broeck, 3 Vr. 105, 115*, the court said, citing *Ridgway* v. *English:* "Although the law presumes that the relation of parent and child exists, in the absence of any arrangement to the contrary, when the child continues in the service of the parent after full age, as before,

yet, that relation ceases when it is shown that compensation was to be made, and that it was so expected by both parties, or that the services were performed under such circumstances as that the expectation was reasonable and proper."

It is a question of intention. But this is not the case of an emancipated daughter, supported by her mother, and rendering service in the household. It is the case of the rendering by a daughter, to an old and helpless mother, of necessary services, which, if not rendered by her, must have been obtained from a stranger for compensation. According to the evidence, it was Catharine who kept the house and supported her mother. Catharine testifies that they lived together, and that she furnished the table. She does not charge for her mother's board, however. Her mother, as before stated, was very old and almost helpless. Mr. Wilson, the executor, says that he saw the testatrix at different times when he was at the house, and that she was " grieving because everything was taken away from her, as it were, and she had no one to lean upon but this daughter of hers." The testatrix could not have lived alone, and could not take care of herself. Catharine's services were absolutely necessary to her. She would have paid Catharine for her services when she received the $1,100, had not Mr. Wilson refused, for reasons wholly personal to himself, to attend to making the payment. She would subsequently have provided in her will for compensation, but was dissuaded from doing so by him, on the ground that Catharine would be able to get her pay for her services after her death, by claim against her estate. She repeatedly said, and, more especially, during the last year of her life, that she desired that Catharine should be well paid for her services. It cannot be doubted that Catharine, when she rendered the services, expected to be compensated for them, and her mother expected to pay her. The services were of such a character, and rendered under such circumstances, as to raise a presumption that there was a contract to pay for them. There was no mutu-

ality in the transaction.    The mother furnished nothing to
Catharine, but, on the other hand, she was dependent on
Catharine.

The decree of the orphans court will be affirmed.