DILGER, Appellant, vs. ESTATE OF McQUADE, Respondent.

*September 17—October 6, 1914.*

*Contracts: Validity: Promise to leave property by will: Action for breach: Right to jury trial: Lost writings: Burden and degree of proof: Court and jury: Witnesses: Competency: Transactions with person since deceased: Parent and child.*

1. An oral contract based on a valid consideration to leave the promisee a legacy in personal property is lawful and enforceable; and a written contract upon a valuable consideration to devise real estate is likewise valid and capable of enforcement.

2. Upon a breach of such contract the promisee may elect to sue for his damages; and such action is triable by jury as a matter of right.

3. The mere fact, in such a case, that the writings had been lost and the alleged contract could only be established by parol would not change the form of action from one at law to one in equity.

4. The burden of proof is upon the plaintiff in such a case to establish the contract by clear, satisfactory, and convincing evidence.

5. In an action triable by jury where plaintiff must establish his case by clear and satisfactory evidence, it is not necessary that the court should be convinced that the proof is clear and satisfactory; but it must determine, in the first instance, whether there is sufficient evidence to warrant a jury in so finding.

6. The mother of a child was not incompetent in this case to testify to the making of a contract by a person since deceased by

which he agreed that, in consideration of the surrender of the child by her parents to him, he would leave to her all his property after the death of himself and his wife. The father being entitled, at the time of such contract, to the care and custody of the child and being legally bound to provide for her support and maintenance, the consideration of the agreement, so far as the parents were concerned, would seem to have been the release of the father from such legal obligation and the surrender of his parental right; hence the child did not derive her title or interest from, through, or under the mother, within the meaning of sec. 4069, Stats.

7. The oral testimony in this case as to the contents of letters, since lost, by which such contract is alleged to have been made, together with some corroborating evidence, is *held* sufficient to support a verdict in favor of the plaintiff.

8. The question for the trial court in such case was whether, considering the evidence and the inferences that might reasonably be drawn therefrom, as well as the surrounding facts and circumstances, in the light most favorable to the plaintiff, there was room for the jury to find that it was clearly and satisfactorily shown that a contract such as was claimed was made.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

The plaintiff was born in February, 1891, and when she was eight months old and in the custody of her father and mother she was surrendered by her parents to Michael McQuade and his wife, who was plaintiff's aunt. McQuade died in 1912 and his wife some time before. Plaintiff was brought up by the McQuades, and it is claimed that at or about the time she was taken by them Mr. McQuade agreed to leave her all of his property after the death of himself and his wife. At this time as well as at the time of his death he owned some real estate and personal property. McQuade died intestate, leaving no heirs at law as far as known at the time of the trial. The net value of his estate was something less than $10,000. The plaintiff filed a claim against the estate for $10,000 damages for breach of the alleged contract in the county court, where judgment was rendered awarding the claimant such sum as remained after debts

and expenses of administration were paid. An appeal was taken to the circuit court from this judgment. The parties stipulated that the case be tried in the circuit court on the record in the county court and treated as though a jury in the circuit court, properly instructed, had returned a general verdict for the plaintiff on the evidence taken in the county court, the defendant reserving the right to object to the sufficiency of the evidence to sustain such verdict. It was further stipulated that if a trial *de novo* was ordered by the court, the plaintiff did not by making the stipulation waive her right to a jury trial. The circuit court disallowed the claim of the plaintiff and awarded judgment for the defendant. Plaintiff appeals.

For the appellant there was a brief by *Kaftan & Reynolds,* attorneys, and *P. H. Martin,* of counsel, and oral argument by *Mr. R. A. Kaftan* and *Mr. Martin.*

For the respondent there was a brief by *Sheridan, Evans & Merrill,* attorneys, and the *Attorney General* and *Byron H. Stebbins,* assistant attorney general, of counsel, and oral argument by *Mr. F. D. Merrill* and *Mr. Stebbins.*

BARNES, J. An oral contract based on a valid consideration to leave the promisee a legacy in personal property is lawful and enforceable. *Jilson v. Gilbert,* 26 Wis. 637; *Slater v. Estate of Cook,* 93 Wis. 104, 67 N. W. 15; *Murtha v. Donohoo,* 149 Wis. 481, 484, 134 N. W. 406, 136 N. W. 158. It logically follows that a written contract founded on a valuable consideration to leave real estate would likewise be valid and capable of enforcement.

The circuit court held that the plaintiff's suit was in the nature of an action for specific performance of a contract to convey real estate and that the verdict of the jury was merely advisory, and that the evidence was insufficient to establish a contract. The verdict was accordingly set aside. If the action was not triable by jury as of right, this court would

not disturb the findings of fact made by the circuit judge as being against the clear preponderance of the testimony, so an inquiry as to the nature of the action becomes pertinent.

Among other things, sec. 4034, Stats., relating to appeals from county courts, provides:

"The appeal may be brought to trial in the same manner as actions originally brought therein, and the court shall proceed to the trial and the determination of the matter according to the rules of law, allowing a trial by jury of all questions of fact, in cases where such trial may be proper."

If there was a valid contract, no good reason is apparent why the plaintiff might not elect to sue for damages for its breach. An action for damages for breach of a contract is triable by jury in the circuit court as a matter of right. If an action is brought for recovery of the amount due on a written instrument for the payment of money, the fact that the instrument was lost would not make the action an equitable one, and we are of the opinion that the mere fact that the alleged contract could only be established by parol because the writings had been lost does not change the form of action from one at law to one in equity.

It was held in the *Jackman Will Case,* 26 Wis. 104, that a contest on the allowance of a will to probate was triable by the court. The authority of this case is somewhat shaken, if indeed it has not been abrogated, by the later cases of *Will of Slinger,* 72 Wis. 22, 37 N. W. 236, and *Bovee v. Johnson,* 130 Wis. 447, 110 N. W. 212. However this may be, the *Jackman Case* went upon the theory that actions of that nature were not triable in the common-law courts by a jury. The contrary is of course true of actions for damages for breaches of contract.

The circuit judge also held that the burden was on the plaintiff to prove her case by clear, satisfactory, and convincing evidence, and that she had made no case for submission to a jury under this rule, assuming that the action were one

in which the plaintiff was entitled to a jury trial as a matter of right.

We accept as correct the rule relied on by the lower court as to the character of the evidence required in a case of this kind. The plaintiff is seeking to establish the contents of lost writings, and sound public policy requires that agreements of the character here involved should be clearly and satisfactorily shown. One of the parties to the alleged contract has been silenced by death. The law should not encourage the making of raids by unscrupulous persons on the estates of deceased persons. Meritorious claims may occasionally be lost by the enforcement of such a rule, but the trumped-up claims that may be defeated by it will in all probability form a much more numerous class. The application of the rule to cases of this kind is well supported by authorities. *Hamlin v. Stevens,* 177 N. Y. 39, 50, 69 N. E. 118; *Tousey v. Hastings,* 194 N. Y. 79, 80, 82, 86 N. E. 831; *Taylor v. Higgs,* 202 N. Y. 65, 70, 95 N. E. 30; *In re Peterson,* 76 Neb. 652, 107 N. W. 993; *Liberty v. Haines,* 103 Me. 182, 68 Atl. 738, 742; *Holmes v. Connable,* 111 *Iowa,* 298, 82 N. W. 780, 781; 40 Cyc. 1072 and cases cited.

In a case triable by jury, to which the rule of evidence stated applies, it is not necessary that the court should be convinced that the proof is clear and satisfactory. Primarily it must determine whether there is sufficient evidence to warrant a jury in so finding. If there is, the jury should be permitted to pass upon the weight to be given to the testimony.

The two principal witnesses for the plaintiff were her mother, and a sister who was about twelve years old when the alleged agreement was made. It is argued that the mother was not a competent witness under sec. 4069, Stats. The testimony of the sister is not very satisfactory, and if the plaintiff's case must rest on her testimony and the other corroborative evidence, excluding that of the mother, this

court could not say that the trial court was clearly wrong in holding that the evidence was too weak to warrant a jury in finding that plaintiff showed in a clear and satisfactory manner that the contract had been made.

We have few statutes that the bench and bar have found it so difficult to understand and apply as sec. 4069. The question here involved would seem to be simple enough. If the daughter derived her interest or title from, through, or under her mother, then the latter was not a competent witness respecting any transaction or communication had by her personally with the deceased. The problem is not as simple as it looks. Does the plaintiff claim through her mother; and, if so, did the mother's evidence relate to a communication or transaction had personally with the deceased? Some courts hold that, inasmuch as the parent furnishes and receives the consideration for the contract, the child necessarily derives her title or interest from the parent. Such is the reasoning of the New York court in *Rosseau v. Rouss,* 180 N. Y. 116, 72 N. E. 916. The Missouri court enunciates the same rule. *Asbury v. Hicklin,* 181 Mo. 658, 81 S. W. 390; *McMorrow v. Dowell,* 116 Mo. App. 289, 90 S. W. 728. And the Iowa court, in a case somewhat different in its facts, but closely akin to the present case in principle, adopts the same rule. *McClanahan v. McClanahan,* 129 Iowa, 411, 105 N. W. 833.

On the other hand, it was held in *Godine v. Kidd,* 64 Hun, 585, 19 N. Y. Supp. 335, that in an action like the one before us the child does not derive her title or interest through the parent. On the contrary, it was said that the rights of the child "were obtained under a contract made, it is true, by the mother, but under the terms of which she [the child] derives from the Knapps [the promisors] her title and interest, if any, in and to the property." Continuing, the court says: "But it is clear that this is a case where the contract was made by the mother on behalf and for the benefit

of the child; and her interest was in no way derived from or received through her mother." In the somewhat analogous case of *Bouton v. Welch,* 170 N. Y. 554, 63 N. E. 539, *Godine v. Kidd* is cited with approval. *Rosseau v. Rouss* was decided by a divided court, and does not expressly at least overrule the earlier case, although Cullen, C. J., in a concurring opinion, thought that such was the effect of the decision. Some facts were disclosed in the *Rosseau Case* which might distinguish it from the others. How far these facts influenced the court in reaching its conclusion is not apparent.

*Rosseau v. Rouss* seems to be placed squarely on the ground that the parent was incompetent, because, having furnished and received the consideration, the child's interest must nec-essarily be derived from the parent. If this be the correct interpretation of the statute, we do not think that the mother was incompetent in the present case. She was a married woman living with her husband at the time. The father was entitled to the care and custody of the child. Sec. 3964, Stats. He was also legally bound to provide for its support and maintenance. Under the alleged agreement with McQuade, the father escaped the obligation of providing for the support of the child and surrendered his parental right to her care and custody. This would seem to be the extent of the consideration received or parted with by the parents. Of course in certain contingencies the mother would have the right to the care and custody of the child. None of these appear to have arisen when the bargain was made. So it would seem that the rule of *Rosseau v. Rouss* has no application to the present case,—the father and not the mother having furnished and received the consideration. Considered from a legal standpoint, the benefits received by the mother under this contract were no greater than the interest of a stockholder and officer of a corporation in a credit due the corporation. In a suit brought by the corporation to collect

such credit, the officer is competent to testify to transactions with the deceased debtor. *Will of Bruendl,* 102 Wis. 45, 78 N. W. 169; *Twohy M. Co. v. Estate of McDonald,* 108 Wis. 21, 83 N. W. 1107. We conclude that the mother was competent, and it is unnecessary to consider whether her testimony was given in reference to a "transaction or communication" had by her "personally with a deceased person."

The only remaining question which we deem it necessary to discuss is whether the court erred in setting aside the verdict. The question is by no means free from doubt. The letters constituting the alleged contract were lost and the transaction took place about twenty-one years before the trial. The memory of witnesses as to the contents of writings after the lapse of a long period of time is apt to be uncertain, and the two principal witnesses do not entirely agree as to what the writings contained. There is nothing inherently improbable about a contract having been made. The McQuades had no children. They had accumulated some property. Apparently Mr. McQuade had no blood relatives. The plaintiff was a niece of his wife. Plaintiff's mother had several children, and she and her husband were in very poor circumstances. Notwithstanding this fact, the mother was very reluctant to part with her child, and no doubt did so because she thought the best interests of the child would be subserved by so doing. The transaction was one calculated to make a lasting impression on her mind. It is reasonable enough to suppose that she would retain in her memory the main and essential facts, although she might be mistaken as to details. There was nothing unusual about the desire of the McQuades to have a child in their home, particularly when that child was a relative of the wife, and there was nothing improbable about their willingness to leave their property to her when they had no nearer relatives. The evidence of Mrs. Mimes, plaintiff's mother, is fairly capable of meaning that Mr. McQuade wrote that if plaintiff's parents would give

her to him and his wife they would raise and care for her and leave her what property they had at their death, and that such offer was accepted by them and the child was accordingly delivered to and reared by the McQuades. In its main features this evidence is corroborated by plaintiff's sister, who testified to reading the McQuade letters and who was then twelve years of age. There is some corroborating evidence to the effect that McQuade had said at different times that they had adopted the plaintiff and that his property was to go to her after the death of himself and wife. There was little evidence to the contrary, and the respondent relies on the weakness of the plaintiff's case more than on the strength of the evidence adduced by the estate. The question for the trial court was whether, considering the evidence and the inferences that might reasonably be drawn therefrom, as well as the surrounding facts and circumstances, in the most favorable light to the plaintiff, there was room for the jury to find that it was clearly and satisfactorily shown that a contract such as was claimed was made. We have carefully gone over the testimony in the case and have reached a conclusion opposite to that arrived at by the circuit court. It would serve no useful purpose to prolong the discussion or to treat in detail the reasons urged by respondent's counsel in support of the judgment. Cases dealing with the sufficiency or insufficiency of the evidence to support a verdict are of little value as precedents, because it rarely happens that two cases are alike in their facts. We can assure counsel that we have carefully read and considered the points raised in their excellent brief, as well as the evidence, and this should suffice. Some other matters are urged in support of the judgment, but they have been resolved against the respondent and do not call for discussion.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment on the verdict.