BROSNIHAN, Appellant, vs. BROSNIHAN, Respondent.

*March 10—April 3, 1923.*

*Reformation of instruments: Grounds: Provisions known to be omitted: Separate oral promise not kept: Equity: Rules and principles: General application.*

1. In an action to reform a deed, the evidence is *held* not to sustain a finding that provisions reserving a life estate in the grantor and requiring the grantee to pay the taxes on the property conveyed were omitted by mistake from the deed, but to show instead that the grantor relied upon the oral promise of the grantee to permit her to occupy the premises for the rest of her life and to pay the taxes thereon as long as she lived.

2. Though the particular case is one that appeals strongly to sympathy and inclines the court to relieve the situation, it cannot do so where it is powerless to grant relief under well established principles and rules, since the broad principles of equity are not designed for any particular case or any particular situation, but affect all in similar circumstances alike.

3. Where there is no fraud or mistake in the preparation of an instrument, and it appears that the parties signing it understood its language and purport, it cannot be reformed because it was executed on the faith of an oral promise which was not kept. *Braun v. Wisconsin Rendering Co.* 92 Wis. 245, followed.

APPEAL from a judgment of the circuit court for Waukesha county: C. M. DAVISON, Circuit Judge. *Reversed.*

The appeal is from a judgment reforming a warranty deed executed by the defendant to plaintiff's grantor.

Plaintiff's action is in ejectment to recover possession of lot numbered 4 in block F, in Cutler & Dakin's Addition to the plat of Prairieville, now the city of Waukesha, Waukesha county, Wisconsin, and for damages for the unlawful withholding of such possession from September. 1, 1919.

The defendant interposed an equitable counterclaim, in which she alleges that on or about December 1, 1913, she executed to one Jerry Brosnihan, her brother, a warranty deed in and to said premises, and that it was understood and

agreed by and between the parties to such conveyance, prior to and at the time of the transfer, that the defendant should retain a life estate in such premises, and that the said Jerry, in consideration of such transfer, would obligate himself to pay the taxes during defendant's lifetime, and that by the mutual mistake of the parties such provisions were omitted from the deed, and defendant prays that her said deed be reformed so as to provide for the reservation of such life estate and such obligation to pay such taxes. After the introduction of plaintiff's formal proof in support of his complaint the further trial of the cause was confined to the issue raised by the counterclaim.

It appears from the evidence that in August, 1908, Jerry Brosnihan advanced for the benefit of the defendant the sum of $3,700 with which to pay certain mortgage incumbrances owing by the defendant upon said real estate, and for which sum she executed and delivered to Jerry a promissory note bearing interest, on which note there was due for principal and interest on the 1st day of December, 1913, the sum of $4,483. At or about the time last mentioned, Jerry, who was a conductor on the Milwaukee road, visited the defendant at her home in Waukesha, and, finding her in ill health, the matter of the defendant's obligation to Jerry was discussed, as was also an adjustment between the parties in relation to the same. Up to this point there is no dispute in the record.

The following appears from the testimony of the defendant with respect to the transaction culminating in the execution of the deed from the defendant to Jerry:

"We had some talk about this place. . . . I was sick at that time. I said, 'I want to work as long as I am able because if I live very long I wouldn't be able to work and I want a home as long as I live.' He said, 'You can stay here as long as you live and I will pay the taxes,' and he did pay the taxes right along. In the morning I said to him, 'I haven't been so very well, and in case I should die I want to

make you secure in regard to your holdings, but I want to hold it as long as I live.' He said, 'You can stay here as long as you live and you don't need to work so hard.' . . . I said to him, 'I will deed this place to you but I want a home here as long as I live.' He said, 'It's all right. You can stay here as long as you live and I will pay the taxes and you must not work so hard.'

"*Q.* What did you do then? *A.* I went down town to the attorney's office and had the deed drawn up and then I took it home to 105 East Park avenue. Then I handed it to Jerry, my brother, and he says to read it over, but I saw that he was looking at it, he looked at it pretty close, so I took it out of his hand, and I read it, read it out loud to him, so then I handed it back to him. He looked at it and he handed it back to me and I took it up to the court-house and had it recorded. . . . There was nothing in the deed about the life estate or taxes. I just overlooked that part of it, it didn't concern me very much because he was my brother. His word was as good as his note every day. He says, '*Mary,* you can stay right here as long as you live.' . . ."

After the execution of the deed, for a period of four years, Jerry periodically visited his sister, and the two corresponded, and during all this time their relations were extremely cordial. Jerry also paid the taxes annually until the year 1918. In 1918 Jerry suffered an apoplectic stroke, and from that time on was incapacitated from pursuing his usual occupation, and after being confined in a hospital and upon receiving treatment for some considerable time he obtained employment as a flagman for the Milwaukee road, receiving as compensation about $40 per month. Jerry's wife having died, he took up his abode with the plaintiff, his unmarried son, and the two have ever since that time kept house together.

In addition to the property above referred to, Jerry is the owner of another piece of property in the city of Waukesha, which yields a monthly rental of about $25. He is also the owner of a vacant lot in Kansas City worth about

$700, and these holdings constitute practically everything that he now owns or is interested in.

In 1919 Jerry conveyed the property in suit, by warranty deed, to the plaintiff pursuant to an oral agreement, not expressed in the deed, by which plaintiff agreed to maintain, support, and nurse him during the balance of his life. On July 31, 1919, plaintiff served a notice upon the defendant to vacate and deliver possession of the property in suit to the plaintiff or to pay a monthly rental of $40, with which request the defendant refused to comply, and the ejectment suit was shortly thereafter begun.

The court, in substance, found that the allegations contained in the counterclaim are true, and that the provision for a reservation of a life estate and the obligation for the payment of the taxes was by the mutual mistake of the parties omitted from the deed, and ordered the deed reformed accordingly, and judgment in favor of the defendant dismissing plaintiff's complaint, with costs. Judgment was thereupon entered in accordance with such findings, and plaintiff thereupon prosecuted this appeal to this court.

For the appellant there was a brief by *Fawsett & Smart*, attorneys, and *Edmund B. Shea*, of counsel, all of Milwaukee, and oral argument by *Mr. Shea*.

For the respondent there was a brief by *Holt & Coombs*, attorneys, and *James E. Thomas*, of counsel, all of Waukesha, and oral argument by *A. N. Coombs*.

DOERFLER, J. The only question presented in this case is whether a court of equity, under the evidence, can award the relief prayed for by the defendant, and whether the findings of the trial court on the subject of mutual mistake, and a judgment pursuant thereto, can be upheld by this court as a matter of law.

While defendant's material evidence with respect to the

agreement for a reservation of a life estate and an assumption of the obligation on the part of Jerry to pay the taxes is denied by Jerry *in toto*, nevertheless there is considerable corroborating evidence which tends to support and sustain the defendant's testimony, and we will assume, in the consideration and determination of the issue, that her testimony in all respects is true.    We are confronted at the outset with the fact that the parties to the transfer were unusually intelligent and capable of comprehending and understanding the nature thereof.    Jerry had at all times evinced an unusual interest in the welfare of his sister, not only by his periodical visits but by his offers, which were accepted, to aid and assist her in a material sense.    In 1908 he paid off her obligations and accepted a note payable with interest, on which, up to the time of the transfer, no interest whatever had been paid, so that the total sum at that time amounted to $4,483.    The parties stipulated in open court on the trial that the property at that time was worth between $7,500 and $8,000.    Subsequent to 1913 Jerry paid the taxes.    The defendant herself procured the execution of the deed in question, and no directions of any kind or nature were given her by Jerry.    The deed was carefully read by both of the parties, and it cannot be disputed but that they were both aware that the instrument did not contain a reservation as to the life estate or an assumption on the part of Jerry in regard to the taxes.    While in one part of her testimony defendant claimed that she overlooked this provision in the deed, at the same time she testified that that did not concern her very much because Jerry was her brother and his word was as good as his note every day.

Does the situation so presented appeal to a court of equity so as to move it to order and adjudge the prayer for reformation, and is it within the province of a court of equity to afford relief under such circumstances?    The parties dealt with each other at arm's length.    From the stand-

point of intelligence they must be deemed upon an equal footing. The transaction itself was not complicated but extremely simple. The absence of the required provisions was within the knowledge of both, and neither even suggested that anything had been omitted from the document or that they were to be inserted. The defendant relied upon the oral promise of her brother, and not upon any agreement, stipulation, or reservation in the document itself. Under the evidence there was neither a mutual mistake of fact nor of law. The relief granted by the lower court, therefore, is such as neither of the parties contemplated and amounts to the making of a new contract, which the lower court, in the exercise of its equitable jurisdiction, had no power to award and which this court cannot grant.

This case is one that appeals strongly to human emotions. A judgment adverse to the defendant will result not only in her dispossession of her home and her deprivation of the only property of value to her, but will also deprive her of her means of a livelihood, and all this at an age where her ability to support herself is negligible. It is indeed a situation much to be regretted; and still, the equities in this case are not entirely with the defendant. Jerry, a man of but limited means, during many years of his active life had manifested an unusual interest in the material welfare of his sister. Illness and misfortune have reduced him in circumstances, and he now also, with his earning capacity greatly curtailed, is facing a situation where his small accumulations are necessary to enable him to subsist. Considering the stipulated value of the property as shown on the trial, we cannot overlook the decreased purchasing price or value of the dollar and the corresponding increase in the value of the property, nor must we lose sight of the fact that no interest or rent was paid by the defendant and received by Jerry since the transfer was made. However much we may be inclined to relieve the situation, we find this

court, under well established principles and rules, powerless. The broad principles of equity jurisprudence are not designed for any particular case or any particular situation, but, like the laws of nature, affect alike all in similar circumstances. If it were not so, equity would lose its force and its dignity in the administration of justice.

The principle involved in this case is clearly declared in 34 Cyc. 922, where it is said:

"When there is no fraud or mistake in the preparation of an instrument, and it appears that the parties signing understood its language and purport, it cannot be reformed on the faith of a contemporaneous oral promise which was not kept."

The same doctrine was pronounced by this court in the case of *Braun v. Wis. R. Co.* 92 Wis. 245, 66 N. W. 196, where it was held:

"This court has repeatedly held that written contracts cannot be reformed except upon most positive and satisfactory evidence showing fraud or mistake in committing the agreement to writing; that is, mistake of one party and fraud of the other, or mutual mistake. . . . The proof must be plain, convincing, and beyond reasonable controversy that by fraud or mistake the true contract was not expressed in the writing; . . . that is, as applied to this case, a mistake in omitting something which the parties intended to have inserted, or something which was in fact a part of the agreement, and which it was supposed was contained in the writing when it was signed and delivered,—not a mistake of judgment, in that one party relied upon the contemporary parol agreement of the other, instead of insisting upon its being reduced to writing. . . . Both parties knew that the words were omitted. Giving the most favorable effect to defendant's evidence, consent was given to the omission upon the promise that such omission should make no difference. For this kind of mistake the law affords no remedy. It was a mere simultaneous parol agreement, which cannot be resorted to to vary or control the written contract." See, also, 3 Pomeroy, Eq. Jur. (2d ed.) § 1376.

The language in the *Braun Case* above quoted is not only decisive of the instant case but appeals to us with full force and effect as though this case had been the one under consideration at the time of the decision in the *Braun Case.* The judgment of the lower court must therefore be reversed.

*By· the Court.*—Judgment reversed, and the cause is remanded with directions to enter judgment in favor of the plaintiff in accordance with the prayer of the complaint, the damages, however, in accordance with the evidence, to be determined at the rate of $35 per month, the rental value of the property, from September 1, 1919.