**SEAMAN et al. v. UNITED STATES.**
Nos. 8787, 8991, 8992.

Circuit Court of Appeals, Seventh Circuit.
July 12, 1946.

720

Helen R. Carloss and T. Carroll Sizer, Sp. Assts. to the Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and L. W. Post, Department of Justice, of ·Washington, D. C., and Timothy T. Cronin and E. J. Koelzer, U. S. Atty., both of Milwaukee, Wis., for appellant.

Edmund B. Shea and Leo J. Federer, both of Milwaukee, Wis., for appellees.

Before KERNER and MINTON, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

The defendant appeals from judgments in favor of the three plaintiffs who are brothers and sister. They brought these actions to recover for alleged illegal assessment and collection of additional income taxes for the year 1936.

In No. 8787, Lauretta A. Seaman, the sister, charged that the Commissioner of

Internal Revenue in computing her income tax liability for 1936, erroneously added to her taxable income an item of $53,803.54 which the Commissioner erroneously assumed had been realized by plaintiff from the sale of 12,602 shares of Seaman Body Corporation preferred stock at $15 per share. The complaint alleged that the shares of stock had been acquired by Harold H. Seaman and Irving Seaman as legatees under the will of their mother, Kate D. Seaman, who died July 20, 1932; that said bequest obligated the legatees to pay to plaintiff all dividends received upon the shares of the said preferred stock during plaintiff's lifetime or until sale thereof; that in case of sale the legatees were to pay to plaintiff during the remainder of her life the equivalent of such dividends amounting to $1 per share or $12,602 per year; that said testatrix's bequest was made pursuant to written family agreements dated January 16, 1923, and February 16, 1931;[1] that the brothers carried out their obligations with respect to dividend payments until July 17, 1936, when they sold the stock to Nash Motors Company; that in order to discharge the $12,602 annual obligation to their sister, the brothers paid to her the sum of $3,150.50 and about August 1, 1936, Harold H. Seaman and Irving Seaman, by virtue of $179,284 paid to certain life insurance companies, procured annuity contracts obligating the insurance companies to pay to plaintiff for the rest of her life the sum of $12,606.88 per year, beginning August 1, 1936; that in consideration of the issuance of said annuity contracts and said payment of $3,150.50, plaintiff released her brothers of all further liability to her; and that by reason of the above facts the defendant owes plaintiff the sum of $19,069.89 with interest on account of income taxes overpaid for the year 1936.

In Nos. 8991 and 8992, the brothers' complaints recite the same general facts as in No. 8787, but the amount stated as due and owing from defendant to Harold was alleged to be $30,259.63 with interest and the amount alleged to be due and owing from defendant to Irving was $30,251.45 with interest. These amounts were predicated on the theory that the brothers sustained deductible losses on the transaction of sale of the preferred stock and the subsequent purchase of the annuity contracts to satisfy their sister's claim against them.

The plaintiffs when apprised with notice of their respective deficiency assessments filed claims for refund with the Commissioner. All three claims were disallowed in full on August 5, 1942. As a consequence, the present actions were commenced.

In No. 8787, defendant contends generally that the court erred in concluding that the sister did not enjoy a recognizable profit and that her economic position was not improved by the sale of the preferred stock by her brothers and their subsequent delivery to her of cash and the purchase of annuities for her. It was stated by defendant's counsel in oral argument, how-

---

[1] The initial family agreement of January 16, 1923, provided that the mother would bequeath all the preferred stock she owned at her death to her three children equally. The brothers on their part agreed to pay over to their sister for her life the dividends on the preferred stock which might be so bequeathed to them by their mother. The sister agreed not to sell 3,500 shares of preferred stock owned by her without written consent of her brothers, and upon her death the brothers would become the owners in equal shares of all the preferred stock owned by her.

The second family agreement entered into February 16, 1931, was made simultaneously with a codicil to the mother's will which had been written subsequent to and in recognition of the agreement of 1923. The codicil provided that so much of the preferred stock as owned by the mother at her death was bequeathed to the brothers in equal shares. By the second agreement the brothers agreed that the sister would receive for her life all dividends which might be paid upon the preferred stock received under the codicil. In the event they sold the stock the brothers agreed that they would pay to their sister for the remainder of her life an annual amount equal to the dividends payable on the preferred stock. Further, the sister was given the right if she so desired to demand the deposit with her of the preferred stock endorsed in blank.

ever, that the defendant will concede the adverse judgment in the sister's case if it is successful in its appeals in the cases of the brothers. In view of such a concession and aware of the further inducement that the facts in the three cases are identical, we shall first examine Nos. 8991 and 8992.

Fortunately, there is no disagreement as to the facts. The issue was drawn with the sale by the brothers of 12,602 shares of preferred stock. It appears that the sale of the preferred stock was a part of liquidation proceedings by the family with regard to their corporate assets in the Seaman Corporation to Nash Motors Company, for on the same day (July 17, 1936) that the preferred stock was sold by the brothers, Lauretta sold 3,500 preferred shares, or all the stock owned by her in the corporation. Also on the same day, the brothers sold 25,000 shares of common stock of the Seaman Corporation to Nash for $1,709,353. These sales represented disposal of plaintiffs' entire holdings in the corporation, and as a result Nash became sole owner of all outstanding preferred and common stock of the corporation. Dissolution of the Seaman Body Corporation became effective as of September 30, 1938.

With the sale of their preferred stock, the brothers created the liability toward their sister, and if they had not sold the preferred stock bequeathed to them by their mother they would have been under no obligation to their sister except to see that she received the dividends declared and paid on the preferred stock. This self-imposed liability on the part of the brothers was obviated within one month with the issuance to the sister of the six annuity policies, a payment of a sum of cash, and a release by Lauretta to her brothers from any further liability on her claim against her brothers under the mother's will and the family agreements.

The District Court made certain findings of fact from which it was able to reach its conclusions of law. The most important findings appear to be that the brothers did not intend to make a gift to their sister and no gift was thereby effected; that this transaction was entered into by the brothers for profit; that the preferred stock sold to Nash was owned exclusively by the brothers and the sister had no property interest in it; that the cost basis of this stock in the hands of the brothers was measured by its full value in the estate of the mother, namely $189,030; that since the brothers sold this stock to Nash for the same amount, they realized neither profit nor loss on the sale; that a loss was sustained by the brothers attributable solely to the cash and six annuity policies transferred to their sister and measured by the full amount of this consideration, namely $182,434.50; that, however, the deduction for loss to which the brothers are entitled is limited to $89,672.56, that being the deductible loss claimed in their claims for refund.

Our question turns ultimately upon whether this was a transaction entered into for profit which produced a loss and is therefore deductible, or whether, in the alternative, a deductible loss was sustained by the Seaman brothers, because under the circumstances of this case there was no gift.

■ Defendant contends that by authority of 26 U.S.C.A.Int.Rev.Code, § 1002, the brothers made a taxable gift to their sister, for as the statute provides: "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter [title], be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year."

It is urged that based upon the usual mortality table,[2] the ascertainable value of a life interest in the preferred stock asset which had a total value of $189,030 held by a person aged 61 (Lauretta's age at her nearest birthday) was $68,789.15. Yet the brothers paid a consideration of $182,434.50 to satisfy their sister's interest

[2] Mortality table prescribed by Art. 19 (7) of Treasury Regulations 79, promulgated under the gift tax law of 1932, as amended.

which, in turn, they sold to Nash along with their own interest in the stock for a total consideration of $189,030. In other words, the brothers paid their sister $182,-434.50 to acquire her interest in the 12,602 shares of preferred stock which was valued at $68,789.15.

In the answers filed on behalf of the government, counterclaims were made against Harold for the recovery of $3,-017.50 with interest and against Irving for the recovery of $3,297.75 with interest, as tax and penalty due on gifts by these individuals in 1936. In holding for the brothers the District Court rejected the counterclaims advanced. We must do likewise, because no gift to Lauretta was effected. Defendant's argument is founded upon the fallacy that the sister had a life interest in the 12,602 shares which the brothers received from their mother's estate. It is conceded by defendant that by the terms of the mother's will the brothers were vested with full property interest in the stock, but it is contended that the peculiar provisions whereby Lauretta was entitled to all the dividends on this stock as well as the right to demand its deposit with her endorsed in blank emasculated the brothers' full property interest. Such an argument is mere verbiage when applied to the situation here, for the brothers had the unfettered right to sell the stock. They availed themselves of this property right, which is definite indicia of ownership. The plain meaning of the mother's bequest to the brothers is not denied, and there is no claim that Nash, the purchaser of the shares of stock, became obligated to Lauretta to the amount of the dividends paid. As pointed out in Scott, Trusts (1939) § 10.1, "Where property is devised charged with the payment of money to a third person, the devisee may become personally liable to pay the amount of the charge. Whether he becomes personally liable depends upon the language of the will." That the mother's will exacted a charge of a personal nature on the brothers is confirmed by the fact of sale with no equitable charge being transferred with the property. In the event of sale, which is the situation here, Lauretta had no lien upon the corpus of the stock. She could look only to her brothers. The brothers were giving no more to Lauretta than they promised they would in the agreements of 1923 and 1931. That they were bound by the agreements cannot be denied because the mother had executed her part of the bargain.

■ The contention that there was no valid consideration on the mother's part likewise is not cogent, for while the mother promised to bequeath only so much of such preferred stock as might be owned by her at the time of her death, under Wisconsin law, which is applicable here, a promise to bequeath property owned at death is valid consideration for a contract. Murtha v. Donohoo, 149 Wis. 481, 134 N. W. 406, 136 N.W. 158, 41 L.R.A.,N.S., 246; Allen v. Ross, 199 Wis. 162, 225 N. W. 831, 64 A.L.R. 180; Dilger v. Estate of McQuade, 158 Wis. 328, 148 N.W. 1085. As we have already noted, upon the sale of the preferred stock the brothers became obligated to Lauretta until her death in the annual amount of $12,602. This obligation they met by the payment of cash and the purchase of annuities. Lauretta was to receive no more than if the brothers had not sold the stock and she had continued to receive the dividends.[3] Payments on the annuities were to cease at her death. Thus it is clear that the brothers provided for Lauretta exactly as they had promised.

Defendant relies on Commissioner v. Wemyss, 324 U.S. 303, 65 S.Ct. 652, 89 L. Ed. 958, 156 A.L.R. 1022, wherein it was held that a gift was effected when the taxpayer transferred stock having a value of about $150,000 to his prospective wife in order to compensate her for the loss of an annual sum of $5,484 which she would lose upon her remarriage. This case is not in point. Here, there was no transfer of property directly to Lauretta. She gave up her claim of annual dividend payments on 12,602 shares of stock against her brothers,

---

[3] True, the annual sum to be paid on the annuities was $12,606.88, but the difference is negligible.

in return for $12,606.88 to be paid annually by the insurance companies. As for the brothers, a comparable status quo was maintained. The sale of the stock was an undenied right belonging to them as legatees under a will. Upon the sale of the preferred stock they satisfied their obligation to Lauretta by the medium of annuity contracts, and the proceeds from the sale of the preferred stock could not be measured as consideration for the annuities payable to the sister, because the brothers owned the stock. Hence, we conclude that the provisions of the statute are inapplicable and there was no error with regard to the findings of the District Court that there was no gift and that the purchase of annuity contracts was not motivated by any donative intent.

Defendant's main contention and argument is that the brothers are entitled to no deduction for loss since the transaction was not entered into for profit. The applicable statute, Revenue Act 1936, § 23(e) (2), 26 U.S.C.A. Int.Rev.Code, § 23(e) (2), provides that individuals may deduct losses "if incurred in any transaction entered into for profit, though not connected with the trade or business." The District Court found as a fact that "The inducement which caused the taxpayers to procure the insurance company annuity contracts * * * was their desire to thereby limit the total amount required to satisfy their personal liability to Lauretta A. Seaman, and to discharge that liability forthwith. They considered this mode of settlement to be financially advantageous to them in that it relieved them of the risk of being required to pay ultimately a larger amount than the premium cost of the insurance company annuity contracts, in the event of Lauretta A. Seaman's living beyond the period of her actuarial life expectancy. * * * It satisfactorily appears from all the circumstances that the settlement arrangement evidenced by the agreements * * * was a transaction entered into for profit on the part of Harold H. Seaman and Irving Seaman."

■ It is definite that the taxpayers have the burden of establishing that this transaction was entered into for profit. Boehm v. Commissioner, 326 U.S. 287, 66 S.Ct. 120; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367; Burnet v. Houston, 283 U. S. 223, 51 S.Ct. 413, 75 L.Ed. 991. In this connection the brothers urge that the overall transaction of the sale to Nash of the common stock as well as the preferred stock must be considered. In other words, when the brothers sold their entire Seaman corporate holdings to Nash they were making a tremendous profit on the sale of the common stock which represented almost 90% of their total assets, while they merely sold their preferred stock at $15 per share, the price it had been valued at when the corporation was formed in 1919. The sale of the preferred stock with its attendant liability to provide for Lauretta is to be regarded as a by-product of a larger, but more important, profitable transaction. Finally, the brothers assert that the stock sale was a further step in the transaction originating between the mother and children in 1923 which was carried through the second inter vivos agreement in 1931 and consummated with the release of the brothers by Lauretta from any further liability toward her.

■ It is elementary that a decision in a tax case depends largely upon its own facts, for "The incidence of taxation depends upon the substance of a transaction." Commissioner v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L. Ed. 981. In effect we are cautioned to examine the taxpayer's intent in initiating the transaction, his apparent purpose in carrying it through and its final disposition, for a transaction which originally is not entered into for profit may by later change become one for profit, Heiner v. Tindle, 276 U.S. 582, 48 S.Ct. 326, 72 L.Ed. 714, and conversely, a transaction which is entered into for profit may become one not for profit when the owner's ultimate disposition of the property evidences a change in the nature of the transaction's intended purpose. Evans v. Rothensies, 3 Cir., 114 F.2d 958. At first glance the argument of the brothers is sustained by the foregoing. Nevertheless, there are definite principles

of federal income taxation law which cannot be ignored.

■ In this connection it is well to remember that the ordinary business of the brothers was the management of a manufacturing plant, hence, it is clear that the purchase of the annuities was a transaction "not connected with the trade or business," for, as we have observed, the brothers were executives of an automobile body corporation, and not vendees of annuities, and in such a situation they are not entitled to a deduction for any loss unless the transaction was entered into for profit. Slover v. United States, Ct.Cl., 33 F.Supp. 446; Hickey v. Chahoon, 2 Cir., 153 F.2d 107; and Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397.

■ In Dresser v. United States, 55 F.2d 499, 510, 74 Ct.Cl. 55, the court said: "A loss, in order to be deductible under the statute, must be an unintentional parting with something of value." This rule is emphasized in subsequent decisions. In McDonald v. Commissioner, 323 U.S. 57, 61, 65 S.Ct. 96, 89 L.Ed. 68, 155 A.L.R. 119, petitioner had deducted as a loss, money expended in a futile campaign to be elected judge of the Court of Common Pleas in Pennsylvania. The Supreme Court in affirming the Tax Court, 1 T.C. 738, and the Circuit Court of Appeals, 3 Cir., 139 F.2d 400, disposed of the taxpayer's argument that campaign expenses constituted a deductible loss incurred in a "transaction entered into for profit" with these words [323 U.S. 61, 65 S.Ct. 97]: "To argue that the loss of the election proves that the expense incurred in such election is a deductible 'loss' under § 23(e) (2) is to play with words." See also A. Giurlani & Bro. v. Commissioner, 9 Cir., 119 F.2d 852; Paine v. Commissioner, 1 Cir., 102 F.2d 110; Cem Securities Corp. v. United States, 55 F.Supp. 109, 102 Ct.Cl. 86.

■ In the instant case the taxpayers purposely expended their money to purchase the annuities. This was not a case of "unintentional parting" with money. The brothers were under no obligation to provide for their sister as they did. The payment of cash to Lauretta and the purchase of annuities for her benefit were affirmative steps on their part. If Lauretta had died before the sale of the preferred stock, the brothers would have acquired complete ownership of the stock without the expenditure of a single dollar. There was nothing in the agreements which obligated the brothers to make payments to the sister's estate. Moreover, the brothers merely agreed that Lauretta would receive for her life all dividends which might be declared and paid on the preferred stock. If no dividends were declared on the preferred stock while the brothers held it, they would have been under no legal obligation to provide for their sister.

Be that as it may, the brothers sold the preferred stock, and thereupon they became legally bound to provide for their sister. They made immediate and satisfactory provision for her with the payment of cash and the purchase of annuities. Whether this direct outlay of cash by the brothers was an investment or gamble for profit on the longevity of Lauretta's life is denied by the nature of the transaction itself. The brothers provided for their sister generously and permanently out of respect to their mother's wishes or love for their sister or both. Their conduct was in every way commendable. The fact that conceivably the brothers might enjoy a profit if the sister lives beyond her age expectancy appears as an extremely remote consideration, and the significance of the conceded profit from the sale of the common stock likewise pales before the crux of the "transaction," which, from all the circumstances appearing herein, was to provide for the sister. Looking at the "substance of the transaction," that the agreements were the products of a cohesive and financially-independent family unit; that the sister was by far the least provided for; that the testatrix's chief purpose in entering the agreements and writing her will was to provide for Lauretta's financial welfare; that the brothers almost immediately upon the sale of the stock made a satisfactory substitution to their sister for any dividend payments she might lose, we

are driven to the conclusion that the brothers did not enter into this transaction for profit. Consequently, the finding of the court that this was a transaction entered into for profit is clearly erroneous.

The judgments of the District Court in Nos. 8991 and 8992 are reversed. In view of defendant's concession in No. 8787, the judgment is affirmed.

BRIGGLE, District Judge, concurs in the result.